ISABEL S. TRIPLER, Respondent, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant.

| 125 | 617 |
|-----|-----|
| 129 | 674 |
| 125 | 617 |
| 135 | 463 |
| 125 | 617 |
| 139 | 3 |
| 125 | 617 |
| 144 | 497 |

Where one, upon whose land an assessment is laid, apparently valid, but, by reason of facts outside of the record, actually void, pays it with full knowledge of these facts, before any attempt has been made to enforce it, the payment may not be regarded as an involuntary one made under coercion in law.

The term "void on its face," as applied to a record, implies that no evidence other than an inspection of the record is necessary to prove its invalidity.

Under the provision of the act relating to local improvements in the city of New York (§ 5, chap. 556, Laws of 1880), making it the duty of the commissioner of public works to certify to the board of assessors all the expenses incurred by the municipality on account of a local improvement, the simple statement of the amount is all that is required, and any other facts stated therein are not thereby made part of the record.

Said commissioner sent a certificate as prescribed, accompanied by a letter which stated that the work was commenced in 1873 by day's work, and was so nearly completed when it came under his charge that it was impracticable to make contracts for the remainder of the work, as would have been done if any considerable quantity of work had been left uncompleted. In an action by a property owner to recover back the amount of an assessment on his land which had been paid, it was claimed on behalf of the city that this letter was part of the record, and so showed the assessment to be void on its face. *Held,* untenable; first, that the letter was no part of the official statement made by the commissioner, and so no part of the record, and the fact that the assessors attached the letter to the statement did not alter its character; second, the result would not have been changed if the statements in the letter had been included in and formed part of the certificate, as facts recited in the certificate other than those required by the statute are not thereby made part of the record, and the certificate would be no evidence of the truth of the facts so stated; third, that the assessment was not necessarily void even if the labor had been performed by day's work, as that might have been authorized by a three-fourths vote of the common council.

It appeared that notice of the confirmation of the assessment and demand of payment within sixty days, or that in case of default interest would be charged, was duly published as required by the statute; that plaintiff did not comply with the demand and that the city took no steps toward enforcing the payment; that the assessment was in fact invalid; that nearly six years after its confirmation, the amount of the assessment on plaintiff's land, with interest, was paid to the clerk of arrears by one to whom plaintiff had sold the land, out of the consideration money, a portion of which had been reserved for that purpose, so as to clear the premises from the encumbrance of the assessment in accordance with the terms of sale. *Held,* that the payment was voluntary and so could not be recovered back; that the great lapse of time before payment, during which the city made no attempt to collect the assessment, and the plaintiff omitted to pay, the fact that there was written evidence on file in the public offices showing the invalidity of the assessment, and the fact that this court had in two reported cases decided similar assessments, which were attacked upon precisely the same grounds, to be invalid, authorized the inference that plaintiff, at the time of the payment, had knowledge that the assessment was void; and so, that there was no coercion in fact or law.

*Peyser* v. *Mayor, etc.* (70 N. Y. 497); *Purssell* v. *Mayor, etc.* (85 id. 330); *Diefenthaler* v. *Mayor, etc.* (111 id. 331); *Strusburgh* v. *Mayor, etc.* (87 id. 452); *Horn* v. *Town of New Lots* (83 id. 100); *Bruecher* v. *Village of Port Chester* (101 id. 240); *Jex* v. *Mayor, etc.* (103 id. 536); *Bank of Commonwealth* v. *Mayor, etc.* (43 id. 184); *Robertson* v. *F. B. Co.* (132 U. S. 17), distinguished.

*It seems,* that if the city had sought to enforce payment of the assessment and plaintiff had thereupon paid, even with knowledge of its invalidity, he might have recovered it back.

*Tripler* v. *Mayor, etc.* (53 Hun, 36), reversed.

(Argued February 4, 1891; decided February 24, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 24, 1889, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to have an assessment upon plaintiff's property for a sewer in the boulevard between Ninety-second and One Hundred and Sixth streets in the city of New York, declared void, and to recover back the amount paid by her on account thereof.

*D. J. Dean* for appellant. The payment was voluntary and the money cannot be recovered. (*Phelps* v. *Mayor, etc.,* 112 N. Y. 216; *Chase* v. *Chase,* 95 id. 373; *Van Nest* v. *Mayor, etc.,* 113 id. 652; *Vaughan* v. *Portchester,* 115 id. 637; *Little* v. *Bowers,* 134 U. S. 547; *Fleetwood* v. *Mayor, etc.,* 2 Sandf. 475; *Forrest* v. *Mayor, etc.,* 13 Abb. Pr. 350; *Wilcox* v. *Mayor, etc.,* 21 J. & S. 436; *Peyser* v. *Mayor, etc.,* 70 N. Y. 497; *Sprague* v. *Birdsall,* 2 Cow. 419; *Clarke* v. *Dutcher,* 9 id. 674; *N. Y. & H. R. R. Co.* v. *Marsh,* 12 N. Y. 308; *Sanford* v. *Mayor, etc.,* 33 Barb. 147; *U. Bank* v. *Mayor,* 51 id. 159; *Flower* v. *Lance,* 59 N. Y. 603; *Wells* v. *Buffalo,* 80 id. 253; *Sexton* v. *Pepper,* 28 Hun, 31; *Lambone* v. *County Comrs.,* 97 U. S. 181; *Burchell* v. *Mayor, etc.,* 30 N. Y. S. R. 418; *Sands* v. *Mayor, etc.,* 13 id. 61; *Redmond* v. *Mayor, etc.,* 33 id. 763; *Smyth* v. *Mayor, etc.,* Id. 804; *U. P. E. Co.* v. *Comrs.,* 98 U. S. 541; *O. S. N. Co.* v. *Tappan,* 16 Blatchf. 296; *U. Ins. Co.* v. *City of Allegheny,* 101 Penn. St 250.)

*James A. Deering* for respondent. The plaintiff is entitled to recover the assessment paid by her, for the reason that the

.assessment was in fact void, because the commissioner of public works had no jurisdiction to do the work by "day's work" without authorization by the common council, and because the facts establishing this want of jurisdiction, *i. e.*, the failure of the common council to authorize by resolution or ordinance the work, and that it was done by "day's work," do not appear upon the face of the assessment-list. (*Jex* v. *Mayor, etc.*, 103 N. Y. 536; *Bruecher* v. *Portchester*, 101 id. 240, 244; *Strusburg* v. *Mayor, etc.*, 87 id. 453; *Horn* v. *Town of New Lots*, 83 id. 100; *Peyser* v. *Mayor, etc.*, 70 id. 497; *N. Bank* v. *Emira*, 53 id. 49; *Marsh* v. *City of Brooklyn*, 59 id. 280.) The plaintiff's assessment was in fact utterly void for want of jurisdiction. (*In re Blodgett*, 91 N. Y. 117; *In re French*, 30 Hun, 83; 93 N. Y. 634; *In re Deering*, 85 id. 1; *Jex* v. *Mayor, etc.*, 103 id. 536.) The assessment is valid upon the face of the list, and the facts establishing its invalidity were required to be proved by extrinsic evidence. (Code Civ. Pro. § 1337; *Nichols* v. *Bridgeport*, 27 Conn. 459; *Douglas* v. *Wickwire*, 19 id. 489; *Dimm's Appeal*, 90 Penn. St. 367; *In re Bossford*, 50 N. Y. 512.) The payment of the assessment was involuntary. The circumstances under which the payment was made constituted duress in law and in fact. (*Vaughan* v. *Portchester*, 6 N. Y. S. R. 68; *Ashmole* v. *Wainright*, L. R. [2 Q. B.] 837; *Chase* v. *Divinel*, 7 Me. 134; *Chandler* v. *Sawyer*, 114 Mass. 364; *Bales* v. *Ins. Co.*, 3 Johns. Cas. 238; *Peyser* v. *Mayor, etc.*, 70 N. Y. 497; *Jex* v. *Mayor, etc.*, 103 id. 536; *Bruecher* v. *Portchester*, 101 id. 240; *Strusburg* v. *Mayor, etc.*, 87 id. 453; *Horn* v. *Town of New Lots*, 83 id. 100; *National Bank of Chemung* v. *Elmira*, 53 id. 749; *Newman* v. *Suprs.*, 45 id. 676; *Marsh* v. *Brooklyn*, 59 id. 280; *Stevens* v. *Fitch*, 11 Metc. 248; *Horner* v. *Barrett*, 2 Robt. 116; *Green* v. *Stone*, 1 How. & J. 405; *Clark* v. *Pinney*, 6 Cow. 297; *Duncan* v. *Kirkpatrick*, 13 S. & R. 292; *Lyman* v. *Edwards*, 12 Day, 153.) The fact that the statute imposed interest at seven per cent for nonpayment of the assessment, and that such interest was accruing thereon was sufficient to constitute duress in fact. The plaintiff paying the assessment to prevent the accruing of this

interest was acting under coercion in fact. (*Shaw* v. *Rickett*, 26 Vt. 482; Cooley on Taxn. 314, 315; *In re Miller*, 24 Hun, 637; *Robertson* v. *Frank*, 132 U. S. 17; *Maxwell* v. *Griswold*, 10 How. [U. S.] 242; *S. Co.* v. *United States*, 111 U. S. 22.) The payment was also involuntary, because the assessment having been unpaid for more than three years, the comptroller of the city was required to sell the same for non-payment thereof, and the lease upon such sale would be presumptive evidence of the validity of both the sale and the assessment. (Laws of 1882, chap. 410, § 941; *Rumsey* v. *City of Buffalo*, 97 N. Y. 114; *Scott* v. *Onderdonk*, 14 id. 9; *Haywood* v. *City of Buffalo*, Id. 534; *Ward* v. *Dewery*, 16 id. 519; *Hatch* v. *City of Buffalo*, 38 id. 276; *Allen* v. *City of Buffalo*, 39 id. 386; *Crube* v. *Andrews*, 40 id. 549; *Newell* ·v. *Wheeler*, 48 id. 486; *Astor* v. *Mayor*, 5 J. & S. 581.) The assessment-list does not, upon its face, disclose the facts showing the invalidity of the assessments. (Laws of 1880, chap. 556, § 5; *In re Merriman*, 84 N. Y. 596; *Diefenthaler* v. *Mayor, etc.*, 111 id. 331.) The decision of this court in *Chase* v. *Chase* (95 N. Y. 373), does not affect the right of the plaintiff to recover, and has no relevancy to the issues here presented. (*In re Deering*, 85 N. Y. 1; *Chase* v. *Chase*, 95 id. 373.)

PECKHAM, J.  I do not think this assessment is void on its face.  It is said to be so because the commissioner of public works at the time he transmitted to the board of assessors the statement of the total amount of all the expenses which had been actually incurred by the Mayor, etc., on account of the work of constructing sewers in the district in question, also sent a letter, which accompanied such statement, but was separate and distinct from it, in which letter the commissioner says: "The work was commenced in 1873 by day's work, and was so nearly completed when it came under my charge in January, 1876, that it was impracticable to make contract for the remainder of the work, as I should have done if any con siderable quantity of work had been left uncompleted."

The defendant now alleges that this letter accompanying the statement of expenses for the work, which was transmitted by the commissioner of public works to the board of assessors, became a part of such statement and, therefore, a part of the record of the procedings for levying the assessment, and that it showed facts which rendered the assessment void on its face.

I think this contention cannot be maintained. By the statute relating to the subject the duty of the commissioner of public works was simply to " certify to the said board of assessors the total amount of all the expenses which shall have been actually incurred by the Mayor, Aldermen and Commonalty of the City of New York on account" of the local improvement, for the expenses of which the certificate is made. The bald fact of the total amount of the expenses is alone provided for by the statute. How the commissioner made up this total, what was the character of the work, by whom performed, and whether by contract or day's work, were facts which, however material in other places and in connection with other matters, had no statutory place in the statement which the commissioner was commanded to transmit to the board. Indeed the commissioner, it is seen, so understood it, for his statement, made under the authority of the law, contained not a word more than the law demanded, and simply gave the total amount of the expenses incurred. The letter accompanying the statement was no part of it, and was no part of the record of assessment. That the members of the board of assessors pinned and fastened it to the statement did not in the least alter the character of the record or of the letter.

But even if the contents of the letter had been included in and had formed a physical portion of the statement, the effect would have been the same. The facts recited in the statement other than that which the statute provided should be stated by the commissioner are not thereby made by his act a part of the record. The commissioner could not make the record consist of anything more than the law provided for,

and he could not make any statement of his a part of such record any further than the statute provided.

This court held in *Board of Water Commissioners* v. *Lansing* (45 N. Y. 19) that a statement in a return which the statute provided the appraisers should make, of some fact other than such as the statute demanded, was no part of the return and was no evidence of the truth of the fact stated. The existence of the fact itself was material, and because of the absence of other and satisfactory proof of its existence the judgment was reversed in this court.

RAPALLO, J., said that no authority was given to the apprais-ers to report any fact other than the sum which they esti-mated, and that the report or certificate of an officer is evidence only of facts which by law he is authorized or required to certify.   To same effect *Wolfe* v. *Washburn* (6 Cow. 261); *Anderson* v. *James* (4 Robt. 35).

The term "void on its face," as applied to a record, implies that no evidence other than an inspection of the record is necessary to prove the fact of invalidity.

If this statement in the letter of the commissioner be no part of his duty to make, it is not evidence of the fact stated, and the party desiring to prove the fact would have to prove it by other evidence.   (*Parr* v. *Village of Greenbush*, 72 N. Y. 463.)

The assessment is not necessarily void, even though the labor had been performed by day's work.   The common council could, by a three-fourths vote, authorize the work to be thus done.   The fact that it had not thus voted was proved by other evidence.

It seems to me we must treat this assessment as one which is valid upon its face, but void on account of the exist-ence of facts *de hors* the record.   We are thus brought to the question, was this a voluntary payment?   On the 24th of May, 1881, the assessment was confirmed, and on the twenty-eight of May in the same year the clerk of arrears, in the manner required by statute, gave notice of its confirma-tion to the parties interested, and required payment thereof

on or before July 27, 1881, and stated that in default thereof interest would be added at the rate of seven per cent from the date of confirmation. The demand of payment required by statute was simply a published notice requiring the amount to be paid to the proper officer within sixty days, or the assessment would bear interest as stated.

The plaintiff did not comply with the demand, and the city took no steps towards enforcing the payment of this assessment from that time forward.

On the 29th of January, 1887, or nearly six years after the confirmation of the assessment, the city still remaining passive as to enforcing the same, the amount of the assessment laid on the plaintiff's land, together with interest, was paid to the clerk of arrears by the attorney for the person to whom the plaintiff herein had sold the property, out of the consideration money reserved for that purpose by the purchaser, and such payment was so paid to free and clear the premises from the lien and encumbrance of the assessment in accordance with the terms of sale and the deed from the plaintiff to the purchaser. This is the finding of the court as to the manner of payment and the person who made it.

Under the law in New York there were sixty days after the confirmation of an assessment during which it drew no interest  The law provided for the publication for ten days of the notice above described. After the expiration of the sixty days and for three years after its confirmation, the assessment might be paid with the interest accruing thereon, and after the expiration of the three years it became the duty of the clerk of arrears, under the direction of the comptroller, to advertise the lands affected by the assessment for sale and to sell them at auction on a day and at a place to be specified in the notice, for the lowest term anyone would take them for and pay the assessment with twelve per cent interest thereon. The first three years had passed and the plaintiff had paid nothing. Nearly three years more passed away and the city authorities still took no step under the law to advertise the lands for sale, but on the contrary remained wholly passive, and it

is after this length of time that the plaintiff gave authority to pay and for the purpose as already stated.

In her complaint the plaintiff alleges she paid the assessment in ignorance of the facts which rendered it void, and under a mistake as to those facts as well as by coercion of law.

The court does not find that the plaintiff paid or permitted payment of the assessment in ignorance of the facts which rendered it void. Nor are any facts found from which an inference of such ignorance could fairly be drawn. Upon looking at the evidence to see if there is any upon which to support a finding of such fact, we are forced to say there is none. The great lapse of time from the confirmation to the payment of the assessment during which the city made no attempt to collect it ; the existence of facts proved by written evidence on file in the public offices of the city and open to the inspection of all who chose to look, and by which the invalid character of the assessment might be easily discovered ; the fact that this court in the cases of two similar assessments (91 N. Y. 117 and 93 id. 634), based upon precisely the same grounds, had in two distinct litigations decided both assessments to be void, and that both decisions had been reported at large in the official series of the reports of this court; the omission of the plaintiff to pay the assessment during all these years, when if it were valid interest was running upon it at the rate of twelve per cent, these facts might well permit a finding of knowledge on the plaintiff's part of the invalidity of the assessment when she authorized its payment. If, therefore, in order to prove that the payment was involuntary, it must appear, in a case like this where there was no coercion in fact, that it was made as the plaintiff alleges in her complaint this payment was made, viz., in ignorance of the facts which rendered the assessment invalid, then the plaintiff here has failed to make out her case and the judgment in her favor must be reversed.

The very word used to describe an involuntary payment, imports a payment made against the will of the person who pays. It implies that there is some fact or circumstance

which overcomes the will and imposes a necessity of payment in order to escape further ills.

There can be no claim made here that this payment was made by any coercion in fact. There was no threat of taking person or goods, and no payment of money was necessary to obtain immediate liberty of person or possession of property. Neither was in the possession or control of the city.

Was there such coercion in law as would render the payment involuntary? Assessments have been likened to judgments and, indeed, have been called *quasi* adjudications of inferior tribunals, and coercion in law has been said to exist where a court, having jurisdiction of the person and subject-matter, has rendered a judgment which is collectible in due course, for in such case the party cast in judgment cannot resist its execution, and his only remedy is an appeal and a reversal of it for error. And as he cannot resist it when execution is attempted, he may as well pay the amount at one time as at another and save the expense of delay. This is practically the language of FOLGER, J., in the case of *Peyser* v. *Mayor, etc., of N. Y.* (70 N. Y. 497.)

The opinion in the *Peyser* case proceeds upon the assumption that the party paying was not aware of the facts which rendered the assessment void. He says, as the party cast in judgment cannot resist its execution when execution is attempted he may as well pay the amount at once. This is said in the case of a judgment of a court (to which he likened the assessment) which had obtained jurisdiction of the person and subject-matter, and where it is stated there is no way by which to resist the execution of such judgment except by way of a reversal thereof on appeal. In such case there is coercion in law, say the courts. By parity of reasoning it is said that as an assessment is a *quasi* judgment, in such case there is also coercion in law. But what is the case? It is where there is no defense and no remedy other than an appeal and the party, if an attempt should be made to enforce it, has no legal means of resisting the execution of the judgment. And he in such case may anticipate its enforcement and pay without writ or pro-

cess. Does a person pay under coercion of law, who pays with knowledge of facts outside of the record, which render the assessment wholly void, where the city takes no steps towards enforcing or collecting it? In such case I think he is not, to use the language of Judge FOLGER in the *Peyser* case, a party cast in judgment, who cannot resist its payment and who has no remedy but a reversal. He has the right at once to commence his action to set aside the apparent lien of the assessment as a cloud upon his title, and to enjoin its collection, and he may do this before any step is taken toward enforcing the assessment. With such knowledge and with such right, if a person choose, nevertheless voluntarily to pay, it is no hardship to hold he cannot recover it back. In such case no reason exists for permitting him to pay it with full knowledge that the assessment is utterly void, and in the absence of any attempt on the part of the city to enforce payment, and in then allowing him to sustain such an action as this to recover back the money so paid. If the owner of the judgment, or the city, in case of the assessment, sought to enforce payment, the party might pay, even with knowledge, and still recover back. But one against whom a judgment is rendered, or upon whose land an assessment is laid, apparently valid, although in truth utterly void by reason of facts outside of the record, who pays it with full knowledge of those facts and without the slightest attempt to enforce payment of either the judgment or assessment cannot, in any just view of the case, be regarded as making an involuntary payment by coercion in law. If the judgment be so far valid as that it cannot be set aside in any other fashion than by a reversal for error, it is not within the principle I have stated. The facts must be outside of the record and must be of such a character as to render the judgment or assessment void. It has been urged that the *Peyser* case showed no further or other attempt to enforce the assessment than is to be found in this case, and that the attempt in this case was simply the publication of the notice and the demand already described. It is then also stated that it was held in the *Peyser* case that such published

demand was in the nature of process and amounted to such an attempt to enforce the payment of the assessment as justified the plaintiff in paying the same. The two cases, however, are not entirely similar. In the *Peyser* case I think it is assumed that the payment was made in ignorance of the facts and in the belief that the assessment was really as valid as on its face it appeared. If it be now claimed that such fact does not appear in the case, and that in reality it was decided without special reference thereto, it must be answered that there is a difference in the facts in these cases under which the payments were made. I think it evident that in this case there was no such coercion in law as to render the payment involuntary. In the *Peyser* case the party paid within the time covered by the notice in order to save the interest, which is a penalty. In this case she did not, but waited nearly six years thereafter and then paid under wholly different circumstances. Where the circumstances are thus different I am of the opinion that the doctrine of the *Peyser* case does not apply. It may be difficult to say exactly what step should be regarded as such an attempt to enforce the payment of an assessment as would authorize its payment and make it involuntary, where the assessment is void for extrinsic facts known to the payer, or for how long a time its virtue as such attempt shall last. In this case there never had been any attempt to enforce payment other than by publication of a notice and demand, and the effect of that publication as an effort to enforce payment or as a demand of payment within sixty days to avoid the running of interest, had been lost by great lapse of time. Hence, we must say in the case before us, there was no coercion in law, unless the plaintiff is able to show she paid the assessment in ignorance of the facts which rendered it wholly void.

In the cases I have examined the point under discussion has not always been made or alluded to. It has been assumed in many cases and in most or all of them the complaint has contained the allegation that the payment was made in ignorance of the facts, where there was no coercion in fact by duress of person or of goods. There is no case that I have been able

to find in which it has been held that a party has a right to recover back the moneys paid upon such facts as exist here, if plaintiff paid with full knowledge.

In *Purssell's* case (85 N. Y. 330), it appeared by his evidence that he was ignorant of the facts which rendered the assessment void, and the court held that as owner of a valuable leasehold interest in the land, he could profit by the fact that the owner of the fee had had the assessment set aside, as he was bound by his covenant to pay all assessments.

*Diefenthaler* v. *Mayor, etc.* (111 N. Y. 331), only held that money which the owner has involuntarily paid can be recovered back as therein stated. The complaint therein alleged the plaintiffs were ignorant of the facts constituting the illegality of the assessment when they paid it. What was necessary to constitute an involuntary payment was not discussed or decided. No question was made about the involuntary character of the payment.

The fact appeared in *Strusburgh* v. *Mayor, etc.* (87 N. Y. 452), that such payment was made in ignorance, and that no degree of vigilance which could have been expected or demanded by the plaintiff would have enabled him to discover the illegality of the assessment.

In *Horn* v. *Town of New Lots* (83 N. Y. 100), no question of this kind arose because the money of the plaintiff, while in the hands of the Kings county clerk was levied upon by the collector of the town and paid to the county treasurer of Kings county to the credit of that town. The plaintiff never paid the money to anyone, but sought to recover it from the town.

In *Bruecher* v. *Village of Port Chester* (101 N. Y. 240) the assessment was valid upon its face, and, the court based its decision upon the fact that a valid warrant was out for its collection, and hence there was coercion in fact.

In *Jex* v. *Mayor, etc.* (103 N. Y. 536), the complaint alleged that the plaintiff was ignorant of the defect in the proceedings and was required to and did pay the amount of the assessment under coercion of law.

In *Bank* v. *Mayor, etc.* (43 N. Y. 184), the money was collected on a warrant, and it was held to have been paid under coercion.

*Robertson* v. *Frank Brothers Co.* (132 U. S. 17) was a clear case of duress in fact. To avoid a penalty, illegal though it were, and to get possession of their goods, which were of a perishable nature, the defendants in error made the addition in their invoices, required by the custom-house official, the direct and necessary effect of which was to make the defendants in error pay higher duties on their imported property.

In the *Purssell* case (*supra*), Judge RAPALLO was of the opinion that the *Peyser* case was decided on the theory that the assessment was in the nature of a judgment and the city was bound to repay what had been received by it in payment of the judgment, upon a reversal thereof, and that it was not a case for the application of the doctrine of voluntary payments. In so speaking the learned judge undoubtedly had in his mind the case of a payment in ignorance of the facts.

In the case of a judgment strictly so called, which is void from extrinsic facts, it might be admitted that if the party paid it with knowledge thereof and where no steps were taken to enforce it, yet, if on appeal, it were reversed for error, he might avail himself of the reversal to recover back the money paid. In that case he does not avail himself of the extrinsic facts in order to obtain the reversal, and it might well be that the principle permitting the recovery of moneys paid on a judgment afterwards reversed on error would apply.

But if a party should pay a void judgment with full knowledge of the extrinsic facts, as above stated, and without any coercion or threat, and then on those very facts should seek to set the same aside and to recover back the money so paid, I think the doctrine permitting a recovery back of money paid on a judgment subsequently reversed, does not apply, and that the case is a clear one for the application of the doctrine of voluntary payments. I think the principle of the two cases, *Vanderbeck* v. *City of Rochester* (122 N. Y. 285), and *Pooley* v. *City of Buffalo* (Id. 592), is to this same effect.

But plaintiff now alleges there was coercion in fact because the statute imposed interest on the principal sum of the unpaid assessment, and a payment to prevent the accruing of interest is claimed to be an involuntary one. There is no finding that the payment was made for that purpose, but there is a finding as to why the payment was made, which is at war with this contention. The running of interest had no terrors for the plaintiff, and the assessment remained unpaid until the execution of the contract alluded to in the findings.

Nor was there any coercion in law or fact arising from the fact that the plaintiff authorized the payment of the assessment in order to enable her to carry out the contract just spoken of. She was under no more coercion in the case than if she had made no contract, but desired simply to free her land from the apparent lien of the assessment. If she authorized the payment with knowledge of the facts, and simply to enable her to carry out the terms of such contract, there was no coercion in law. (*Phelps* v. *Mayor, etc.,* 112 N. Y. 216; *Vaughn* v. *Village of Portchester,* 115 id. 637, reversing 43 Hun, 427.)

I think in this case the law required plaintiff to prove that she authorized the payment in ignorance of the facts, and as there is no such finding and no evidence in the case upon which to base it, the judgment in her favor must for that reason.be reversed and a new trial ordered, with costs to abide the event.

All concur; RUGER, Ch. J., in result.

Judgment reversed.