JOHN POTH, Plaintiff, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Defendant.

*Illegal assessment — relief obtainable — prohibitive provisions of the Consolidation Act, chap.* 410 *of* 1882 — *to what cases applicable.*

Where proceedings are taken by a person, prior to the payment of an assessment levied against him by the municipal corporation of the city of New York, for the purpose of obtaining redress in respect to certain illegalities complained of therein, all the relief he is entitled to is to have the same reduced to the fair value of the improvements by which his property has been benefited, but if he commences proceedings for such relief and then abandons them and waits until his property is advertised for sale, and then pays his assessment, he can thereafter maintain an action to have the whole assessment declared void and recover back the whole amount paid.

The prohibitive legislation contained in the Consolidation Act is applicable only to cases where the lien of the assessment continues, and has no application whatever to those cases where a party takes no steps to obtain any redress for the injustice done him, but waits until his property is about to be sold in the ordinary procedure and then pays the assessment and removes the lien.

MOTION by the defendant, The Mayor, Aldermen and Commonalty of the City of New York, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance after the verdict of a jury for $4,154.63 in favor of the plaintiff, rendered by direction of the court after a trial at the New York Circuit on the 27th day of November, 1893.

*G. L. Sterling*, for the motion.

*J. Flannery*, opposed.

VAN BRUNT, P. J. :

This action was brought to have an assessment declared void, and to recover back the amount paid upon the same by the plaintiff.

There is no question raised upon this appeal as to the payment being involuntary, nor is it claimed upon the part of the defense that the whole of the assessment in question was valid. But it is conceded that some material portion of the assessment at least is void. And it is claimed upon the part of the plaintiff that such

being the fact, and the payment of the assessment having been involuntary, in this action he has a right to have the whole assessment declared void and to recover back the whole amount paid.

If this position is well taken, as we fear it is, if we comprehend correctly the adjudications in the Court of Appeals, then the sluggard who has waited until the last moment to ask the intervention of the court, is able to obtain much greater relief than he who has acted with diligence and sought to have the evils under which he has suffered properly corrected. There is no question but that if any proceedings had been taken prior to the payment of the assessment by the plaintiff for the purpose of redress in respect to the illegalities complained of in the assessment, all the relief he could have obtained would have been to have had the same reduced to the fair value of the improvement by which his property had been benefited. But having commenced proceedings for this relief, and having abandoned them, and having waited until his property was advertised for sale, and then having paid the assessment, it seems that he can maintain an action to have the whole assessment declared void, and recover back the whole amount paid; and this, because it seems to have been held by the Court of Appeals that the prohibiting legislation contained in the Consolidation Act was applicable only to cases where the lien of the assessment continued, and had no application whatever to those cases where a party took no steps to obtain any redress for the injustice done him, but waited until his property was about to be sold in the ordinary procedure, and then paid the assessment and removed the lien.

It is undoubtedly true that in the cases of *Chase* v. *Chase* (95 N. Y. 373) and *In re Smith* (99 id. 424) the court states that although the effect of such legislation is to prevent a party from taking active proceedings to have an assessment declared void, it did not deprive him of his power to stand upon his legal rights and challenge the validity of the assessment whenever his property was seized under it, or it was made the foundation of proceedings against him. But we think that in the cases of *Jex* v. *Mayor* (103 N. Y. 536); *Diefenthaler* v. *Mayor* (111 id. 331), and *Tripler* v. *Mayor* (125 id. 617) the court of last resort has construed the statutes in question to apply to those cases only in which the lien of the assessment continued. It is true that the *Jex* case construed

the act of 1858 as amended in 1874, and that the *Diefenthaler* case construed the act of 1880, which differs materially from the provisions of the Consolidation Act, which prevailed at the time the plaintiff's rights, if any, accrued.

In *Tripler* v. *Mayor*, however, the court seem to have recognized the right to a recovery of the whole of an assessment, notwithstanding the prohibitions contained in the Consolidation Act, where irregularities and illegalities existed which affected the validity of the assessment, and where the payment of the same had been involuntary.

It is true that in that case the court held that the payment was not involuntary and that a recovery could not be had upon that ground. But in view of the opinions expressed in the *Jex* and *Diefenthaler* cases, it would seem that the court had determined that the same principles applied.

If it were not for this decision in the case of *Tripler* v. *Mayor*, we think it might well be shown that the enactment contained in the Consolidation Act in reference to the vacating and modifying of assessments, materially differs in its provisions from those which existed under the act of 1858 as amended in 1874, and those which were contained in chapter 550 of the Laws of 1880.

Section 9 of the law of 1880, which was held to be controlling in the disposition of the *Diefenthaler* case, by its language expressly referred to the assessment specified in the first section of the act under which the assessment in the *Diefenthaler* case fell, and that section provided that the lien of such assessment should not be disturbed, modified, etc. It might very well be held, therefore, under that act that all that the Legislature was legislating in respect to were the liens created by such assessments.

But in the Consolidation Act, upon an examination of sections 897–903, 913, it seems to us that it will be seen that there was no intention to restrict the prohibition to those cases in which an application was made to the courts for relief in respect to the lien of the assessments. It may be that the rule laid down in *The Matter of Smith* and in the case of *Chase* v. *Chase* would still obtain, viz., that there was no intention to take away the right of the property owner to defend against an illegal assessment when it was attempted to seize his property because thereof. But that the intention of the

Legislature by the enactments contained in the Consolidation Act was to make its provisions apply to all assessments confirmed after June 9, 1880, the date of the passage of chapter 550 of the Laws of 1880 (a class different from those affected by the last-mentioned act), seems to be manifest upon a examination of the sections of the Consolidation Act to which reference has been made.

Section 897 provides that no suit or action in the nature of a bill of equity or otherwise shall be commenced for the vacation of any assessment; or to remove a cloud upon title, but the owners shall be confined to their remedies in such cases to the proceedings under this title (which was substantially the act of 1858 as amended by the act of 1874).

Section 898 provides for the proceedings to be taken to obtain relief for fraud or substantial error in an assessment.

Section 899 provides that assessments shall not be vacated because of certain omissions.

Sections 900 and 901 are simply directory as to procedure.

Section 902 provides that sections 898–901 shall apply to the proceedings therein stated, viz.: *First*, to proceedings or actions commenced on or before September 9, 1880, to vacate or set aside assessments for any local improvement confirmed by the board of revision and correction of assessments before June 9, 1880 ; and, *secondly*, to proceedings or actions which since June ninth have been commenced, or may hereafter be commenced, to vacate or set aside any assessment completed before said day, etc. And then by section 903 the Legislature provided generally that no court should vacate or reduce any assessment in fact or apparent confirmed after June 9, 1880, whether *void* or voidable, on any property for any local improvement thereafter completed, otherwise than to reduce, etc. ; and further provided that in no event should that portion of any such assessment which is equivalent to the fair value of any actual local improvement, with interest from the date of confirmation, be disturbed for any cause.

Now, it is apparent from the very language of this section that it is intended to be absolutely prohibitory in respect to *all* proceedings affecting such assessments, and that it does not refer to the proceedings provided for by section 887, among many other reasons, because no suit to remove a cloud upon the title could be maintained

in respect to an assessment which was void upon its face, and the language of this section covers that procedure as well as all others.

Section 903 stands by itself, having reference to no other portion of the act; it is explicit in its terms, and, as already stated, there is nothing in any other provision of the act which restricts its operation. And when we read section 913 it is more plainly seen that there is no foundation for the claim that section 903 applies only to those cases in which liens for assessments exist, but that it prohibits all affirmative action upon the part of the property owner, except to have an assessment reduced to the fair value of the actual local improvement.

Section 913 says: " The lien of any assessment specified in section 902," and then follows the language which occurred in the act of 1880.

Section 902 applied only to those cases where the assessment had been completed before June 9, 1880, and confirmed by the board of revision and correction after said date. But section 903 applied to all assessments confirmed after June 9, 1880, and was general in its terms, and was not in any way restricted by the wording of section 913.

Although this seems to us to have been the intention of the Legislature, and secured manifest justice to the property owner as well as afforded some protection to the city, yet, in view of the decision in *Tripler* v. *Mayor*, where the court held that an action such as the one at bar could be maintained to recover the whole amount of the assessment, because of illegality in part, we feel bound to hold that the plaintiff was entitled to recover the whole amount of the assessment.

The exceptions should be overruled and judgment ordered upon the verdict rendered, with costs.