McCoy Service, Inc., Plaintiff, *v.* New York Telephone Company, Defendant.

Municipal Court of New York, Borough of Manhattan, Third District, April 16, 1937.

*S. Earl Levene*, for the plaintiff.

*Charles T. Russell* [*Edward L. Blackman* of counsel], for the defendant.

Sullivan, J. The action is in contract to recover an alleged overcharge. The jury has found a verdict for the plaintiff. The defendant has moved to set the verdict aside on the ground that it is against the weight of the evidence and contrary to law.

Most of the evidence adduced upon the trial, which lasted three days, related to the timing of telephone calls made by a prearranged plan. Twenty-one witnesses testified in person. The testimony of other persons (defendant's telephone operators having knowledge of the calls in question) was stipulated upon the record with the same force and effect as though they had taken the witness stand. The plaintiff's device, known as a tele-chek, and the defendant's timing instrument, a calculagraph, used in connection with its central office switchboards, were introduced in evidence. The operation of each was demonstrated before the jury. In addition, there

were numerous other documentary exhibits. The issue of fact presented by this evidence was whose timing of the various calls was correct — the plaintiff's or the defendant's.

The plaintiff's president and the manager of the defendant's commercial office in the Murray Hill Exchange also testified as to what each said when the plaintiff complained about the amount of the charges. There was a sharp issue concerning that conversation. The plaintiff paid the bill with a check indorsed "under protest," wrote a letter in addition and, on the same day, commenced this action.

The jury deliberated for more than three hours. The next day a sealed verdict, signed by each juror, was handed to the court, opened in the presence of counsel, exhibited to each of them, and then recorded. Apprised of its contents, counsel for the defendant requested a polling of the jury, which was immediately done, each juror answering that it was his verdict. No question has been raised as to the omission of an amount of money in the sealed verdict. Apparently none could be raised. At any rate, it is inconsequential.

Mindful of the conflict in the testimony, the court in its charge to the jury stressed the burden of proof that rested upon the plaintiff, emphasized the importance of considering the credibility of all the witnesses, the weighing of all the evidence, and instructed the jury as to their right to draw reasonable inferences and their duty to arrive at just conclusions upon the evidence and the law, as charged, and nothing else, and to do so absolutely fairly and impartially.

At the conclusion of the charge the court asked counsel if they had any exceptions to take or any requests to make and each responded in the negative.

As stated by the court, after the jury had been polled, the issues of fact appeared to have been resolved by the jury's verdict, and there remained the question of law as to whether or not the toll charges were paid under duress. At the end of the plaintiff's case, again upon the conclusion of the entire case and finally after the verdict, the court reserved decision upon the motions of the defendant's counsel made upon this particular ground.

Most of the arguments in the excellent briefs of counsel deal with the question of the payment of the amount sought to be recovered: Was it voluntary or involuntary? Early in the trial counsel must have realized that this question gave the court some concern. Hence the reservation of decision thereon.

The court is in accord with the point stated in the printed brief of counsel for the defendant that having proceeded with its defense

after the court reserved decision on the motion to dismiss the complaint at the end of the plaintiff's case, the question of duress must be considered upon the entire record. That has been done. Whether the payment was made by the plaintiff with full knowledge of the facts and with an ulterior motive, or whether it was made under compulsion, unwillingly, and in fear of the termination of its telephone service was a matter for the determination of the jury when they considered, as was their duty, all of the testimony of the plaintiff's president and of the defendant's manager.

In and of itself the fact that there was written upon the check given in payment the words " paid under protest " is not sufficient to establish duress. In *Matter of Welton* (141 Misc. 674, 691) the court said: " Popular impression to the contrary notwithstanding, it appears to be authoritatively settled that the making of, or failure to make, protest at the time a payment is made, will in no wise vary the basic rights of recovery." (Citing cases.)

The letter, in evidence, sent by the plaintiff's president to the defendant at the time of the issuance of the check is as follows: " This is to confirm our telephone conversation of this morning during which you refused our request for adjustments on all over-time charges billed us on numerous calls made during September, 1936, as shown on the October 1, 1936, bill. Your decision while surprising must of necessity be accepted, and so it is my intention to pay these charges, protesting again at this writing that they are not correct."

One of the issues the jury was called upon to settle was whether or not there had been a threat of termination of telephone service. That there would be such an issue was made plain in the opening statements of plaintiff's counsel to the jury, which were recorded by the stenographer at the request of defendant's counsel.

At great length in his briefs defendant's counsel directs attention to the testimony of the two witnesses, the plaintiff's president and the defendant's manager, with reference to the conversation had when the bill was paid, and compares the former's testimony on direct with his testimony in rebuttal. He also compares both with the testimony of the latter when cross-examined by plaintiff's counsel and strongly urges the court to exercise its discretionary power to set the verdict aside upon the weight of the evidence and upon the law.

As already indicated, the issues were essentially factual. It was the function of the jury to determine them.

On the question of law each side quotes from the case of *Tripler* v. *Mayor of City of New York* (125 N. Y. 617, at p. 625), where the court said: " The very word used to describe an involuntary pay-

ment, imports a payment made against the will of the person who pays. ·It implies that there is some fact or circumstance which overcomes the will and imposes a necessity of payment in order to escape further ills."

Here the plaintiff wrote the defendant: "Your decision while surprising must of necessity be accepted;" the payment of the bill was protested; and presumably the jury saw fit to accept the plaintiff's testimony.

In view of all of this, and knowing that the trial was one almost entirely of fact, the court feels it has no right to disturb the jury's verdict.

The motion to set aside the verdict is denied. All motions upon which decision was reserved are now denied. Exception to the defendant.