OPINION OF THE COURT
ClPARICK, J.
Plaintiffs remitted $27,000 to defendant in satisfaction of sewer and water tap-in fees due in conjunction with their *665 application for a building permit to proceed with their planned renovation of new business premises in Wallkill. The fees, adopted by defendant in response to mandates imposed by the State and Federal governments to upgrade WallkiU’s sewer and water systems, were subsequently declared unconstitutional and plaintiffs were awarded a judgment in the amount of the fees paid plus interest, costs and disbursements. On this appeal, defendant challenges plaintiffs’ entitlement to the refund based on plaintiffs’ failure to register any protest upon payment of the sewer and water tap-in fees.
On January 12, 1989, defendant adopted Resolution No. 1, imposing a $2,000 tap-in fee for each eight-fixture unit connected to the Town water system, and Resolution No. 2, establishing a $2,500 tap-in fee for each eight-fixture unit connected to the Wallkill sewer system. Each resolution directed that all fees were to be deposited into capital improvement funds respectively earmarked for the water and sewer systems.
Thus, after plaintiffs submitted their application for a building permit together with the $11,000 permit fee on December 11, 1991, they were advised by defendant that no permit would issue until the sewer and water tap-in fees were remitted in accordance with Resolutions Nos. 1 and 2. Following an inquiry to Wallkill’s Building Inspector, plaintiffs determined to remit $27,000 for sewer and water tap-in fees to ensure there would be no delay in the issuance of the building permit and disruption of their proposed expansion plans. Plaintiffs were in the process of expanding their business operations by renovating vacant space adjacent to their present quarters. It is particularly significant that at the time plaintiffs remitted the tap-in fees only the architectural plans for the "build-out” of the additional space had been secured. No dates had yet been fixed by contract for the actual renovation to commence. Plaintiffs assert that it remains uncontroverted that the subject premises were fully connected to Wallkill’s water and sewer systems, and all they sought was an extension of the lines into that portion of the interior they were renovating to install plumbing fixtures. Plaintiffs represent that this work did not require any effort or expense on defendant’s behalf. Yet, without formal protest, plaintiffs remitted the $27,000 fee to defendant by check dated January 8, 1992. Plaintiffs now contend that this payment was coerced, alleging that no work *666 could progress on the premises absent payment of this arbitrary and unreasonable fee.
Plaintiffs instituted this action seeking a judgment declaring Resolutions Nos. 1 and 2 unconstitutional and a refund of moneys paid as an illegal tax under these resolutions. Supreme Court granted plaintiffs’ motion for summary judgment, declaring the resolutions void as unconstitutional and awarding plaintiffs judgment for fees paid under Resolutions Nos. 1 and 2. Supreme Court further denied defendant’s cross motion to dismiss the complaint. The Appellate Division affirmed, holding that Video Aid Corp. involuntarily paid the fees to avoid a threatened interference with the immediate possession of its property (see, Video Aid Corp. v Town of Wallkill, 203 AD2d 554). The Appellate Division was persuaded that this fact together with the prompt commencement of this action challenging the fees demonstrated the involuntariness of plaintiffs’ payment, and that Wallkill would be unjustly enriched if permitted to retain the tap-in fees it improperly extracted from plaintiffs (see, id., at 557). We granted leave to appeal to defendant, and now reverse the order of the Appellate Division to the extent it directed a refund.[1] The issue presented here is whether plaintiffs have established that nonpayment of the tap-in fees would have interfered with their immediate possession of the property, supporting the claim that the $27,000 fee was paid under duress. We conclude that plaintiffs are not entitled to a refund. Nothing in this case compels departure from the established rule that the voluntary payment of a municipal fee that is subsequently nullified is not recoverable.
The settled law is that the payment of a tax or fee cannot be recovered subsequent to the invalidation of the taxing statute or rule, unless the taxpayer can demonstrate that the payment was involuntary (see, City of Rochester v Chiarella, 58 NY2d 316, 323, cert denied sub nom. Quality Packaging Supply Corp. v City of Rochester, 464 US 828; Mercury Mach. Importing Corp. v City of New York, 3 NY2d 418, 424-425; Adrico Realty Corp. v City of New York, 250 NY 29, 32; accord, City of Rochester v Chiarella, 65 NY2d 92, 99, revg 100 AD2d 46). In reality, the payment of a tax or municipal fee is by nature involuntary. Whether a payment is considered involuntary in the context of an action for reimbursement of *667 taxes or fees paid to a governmental entity is a question of intention to be resolved upon consideration of the totality of the circumstances (see, City of Rochester v Chiarella, 58 NY2d, at 325, supra; People ex rel. Wessell, Nickel & Gross v Craig, 236 NY 100, 105).
Payment under express protest is an indication that a tax is not paid voluntarily (see, Mercury Mach. Importing Corp. v City of New York, 3 NY2d, at 424, supra). Where protest has been interposed, the municipality is notified that it may be obliged to refund the taxes and must be prepared to meet that contingency (see, id., at 426). Otherwise, moneys remitted as taxes or fees are applied to authorized public expenditures, and financial provision is not made for refunds. In situations where payment of the tax or fee is made under actual duress or coercion, which is present when payment is necessary to avoid threatened interference with present liberty of person or immediate possession of property, the failure to formally protest will be excused. (See, Mercury Mach. Importing Corp. v City of New York, 3 NY2d, at 425, supra; Five Boro Elec. Contrs. Assn. v City of New York, 12 NY2d 146, 149-150; Adrico Realty Corp. v City of New York, 250 NY, at 32, supra.)[2]
Determinative of the voluntary nature of plaintiffs’ payment of the sewer and water tap-in fees is the absence of any evidence of actual duress and their failure to register any formal protest at the time of payment (cf., People ex rel. Wessell, Nickel & Gross v Craig, 236 NY, at 105, supra [pendency of certiorari proceeding "at least the equivalent of protest”]; Corporate Prop. Investors v Board of Assessors, 153 AD2d 656, 660, appeal dismissed in part, denied in part 75 NY2d 802, affd sub nom. Matter of Bowery Sav. Bank v Board of Assessors, 80 NY2d 961 [protest established by pendency of legal proceeding at time of payment in each year recovery sought]; but see, Conklin v Town of Southampton, 141 AD2d *668 596, 598 [drastic financial and administrative implications prompted finding that commencement of action on behalf of potentially aggrieved real estate taxpayers did not constitute protest by each proposed class member]). As defendant acknowledged, had plaintiffs simply written "without prejudice” or "under protest” on the check they tendered as payment— which they concede they did not — the involuntary nature of the payment would have been established.
That plaintiffs anticipated disruption of their tight renovation schedule absent prompt payment of the tap-in fees is insufficient to constitute duress or coercion and excuse formal protest (see, Adrico Realty Corp. v City of New York, 250 NY, at 33, supra [taxpayer who remits payment to release property from an illegal hold or lien does so under duress]; Tripler v Mayor of City of N. Y., 125 NY 617, 631; Goldberg v City of New York, 260 App Div 61, affd without opn 285 NY 705). Even if we were to accept the dissent’s proposition that such "interference” with the expansion of an existing business is equivalent to the duress suffered by licensees whose nonpayment of the fee would deprive them of their very livelihood (see, Five Boro Elec. Contrs. Assn. v City of New York, 12 NY2d, at 148-149, supra), the record in this case is devoid of any facts supporting plaintiffs’ claim that they would suffer harm as a result of nonpayment of the tap-in fees.
Duress is present in situations where the taxpayer’s only alternative is to submit to the illegal exaction or discontinue its business (see, Five Boro Elec. Contrs. Assn, v City of New York, 12 NY2d, at 149, supra; Mercury Mach. Importing Corp. v City of New York, 3 NY2d, at 425, supra; Boris Leasing Corp. v City of New York, 285 App Div 126, 129, affd for reasons stated below 309 NY 682). The situation presented in Five Boro is illustrative.
For a four-year period, New York City exacted an exorbitant license fee from electricians, which fee was ultimately held unconstitutional as it bore no reasonable relationship to the costs of services involved in issuing the licenses (see, Five Boro Elec. Contrs. Assn. v City of New York, 12 NY2d, at 147, supra). Five Boro was the action in which several hundred electricians obtained a judgment to recover the excess payments. While it was undisputed that the license fees were not paid under protest, it was held that the payments were made under duress as a matter of law, thereby excusing protest (see, id., at 148). On appeal to this Court, it was determined that *669 "protest was not required in view of the compulsory nature of the payment * * * [the electricians] were not allowed to operate without licenses, nor could their licenses be renewed except by payment of excessive fees. * * * Undue interference with the conduct of business or occupation through an obstructive use of the licensing power has been held to constitute duress” (id., at 149-150). This contrasts sharply with the situation presented at bar.
Nothing is presented here to show that plaintiffs "were wholly or partly prevented from engaging in business unless the illegal exactions were paid” (id., at 150; see also, Tripler v Mayor of City of N. Y., 125 NY, at 631, supra). There is no evidence of any threat, real or perceived, that the operation of plaintiffs’ business would be impaired if they mounted a challenge to the tap-in fees. Although Video Aid Corp.’s vice-president alleges that their expansion plans would have been jeopardized absent payment of the tap-in fees, there is no proof of this claim, and plaintiffs did not even lodge a complaint that the tap-in fees were onerous until they instituted this action one month after payment was remitted (see, Tripler v Mayor of City of N. Y., 125 NY, at 631, supra; Goldberg v City of New York, 260 App Div 61, supra). Thus, no authentic resistance is evident. To this end, plaintiffs cannot establish that their payment of the sewer and water tap-in fees was involuntary, nor can they demonstrate their situation constitutes an exception to avoid application of the settled rule that a voluntary payment of a tax or fee cannot be recovered.
This record contains no evidence to support the primarily factual determination by the Appellate Division, embraced by the dissent, that Video Aid Corp. would have been prevented from engaging in business absent payment of the tap-in fees or that the payment of such fees was made under duress simply because the payment was a precondition for the issuance of a building permit. Plaintiffs were in the process of planning the expansion of their existing business operations, rendering the conclusion reached by the Appellate Division and the dissent that plaintiffs remitted the fees involuntarily to avoid interference with their possession of the property pure speculation (cf., Buckley v Mayor of City of N. Y., 30 App Div 463, affd without opn 159 NY 558). The dissent argues that the Court’s review of this matter is framed by "supportable findings and inferences,” but Supreme Court made no findings of fact; indeed, it did not even address the question of duress in its opinion. Supreme Court reviewed only those facts *670 necessary to determine the legal question of whether the fees were unconstitutional, and having declared that they were, simply ordered a refund, without any consideration of any facts that might reveal either plaintiffs’ voluntariness or duress. The Appellate Division’s statements on the issue were entirely conclusory.
In sum, a simple payment "under protest” for the taxpayer preserves its challenge and for the municipality alerts it, at the time of receipt, to the uncertainty of those revenues. Short of that simple, unequivocal step — plainly important to governmental fiscal operations — a taxpayer may recover an illegal payment only where the taxpayer establishes that payment was made under duress, meaning more than business or economic inconvenience. Here, plaintiffs failed to make that showing. Plaintiffs were not prevented from possessing or using their property and showed no impairment to their business operations. All plaintiffs showed was that they could not proceed with an intended renovation as they had hoped.
Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, and the award of damages to plaintiffs against defendant vacated.

. We note that, on this appeal, defendant does not challenge that part of the Appellate Division order which held the resolutions unconstitutional.

. We do not agree with the dissent’s interpretation of the holding in City of New York v 17 Vista Assocs. (84 NY2d 299). That case involved an illegal agreement between the City of New York and a developer that arranged to pay the City a sum of money in exchange for expedited and favorable classification of a building defendant sought to purchase, notwithstanding the City’s prior unfavorable determination on the building’s classification. It is in this context that we stated that "[t]he law should not be applied more favorably * * * based on whether or not a party is able to pay” (City of New York v 17 Vista Assocs., 84 NY2d, at 306, supra), a circumstance not evident at bar.