OPINION OF THE COURT
Robert G. Hurlbutt, J.
In this declaratory judgment action, plaintiff seeks summary judgment declaring that an increase in the mandated rate of payment to hospitals for in-patient services provided to subscribers of health maintenance organizations (hereinafter HMOs), pursuant to Public Health Law § 2807-c (2-a), represents a tax, and that such tax, as applied to plaintiff, is unconstitutional. Plaintiff, incorporated as a not-for-profit corporation pursuant to the Not-For-Profit Corporation Law in 1975, is a health maintenance organization under article 44 of the Public Health Law and a health service corporation under article 43 of the Insurance Law. As a health maintenance organization, plaintiff arranges for the provision of health services to its enrolled subscribers for a set, prepaid fee.
In April 1992, the State Legislature amended the Public Health Law as part of the Omnibus Revenue Act of 1992 (L 1992, ch 55). Public Health Law § 2807-c (2-a)[1] increased the amounts HMOs paid to hospitals for in-patient hospital ser *623 vices furnished to their non-Medicaid subscribers. Previously, the rate of payment to a hospital was based upon Diagnosis Related Groups (DRGs) which dictated the amount paid for a patient’s care based upon the diagnosis category rather than the actual cost of the care. Public Health Law § 2807-c (2-a) imposed an assessment upon the amounts paid by HMOs for in-patient hospital care, effective with patient discharges occurring on or after July 1, 1992, adding a factor of 9% over and above the DRG rate. The monies generated by the 9% assessment were not to be paid to the hospital, but were paid to an HMO pool and then were deposited to the State’s general fund.[2] (Public Health Law § 2807-c [2-a] [c] [i].)
Pursuant to the legislation, the 9% increase was subject to reduction if the HMO met targeted enrollment goals for Medicaid recipients in each social services district in which it operated. Plaintiff sought and was granted reductions in assessment,[3] but made payments to the HMO pool under Public Health Law § 2807-c (2-a) in the sum of $122,850 on August 14, 1992, $119,972 on September 10, 1992, and $241,884 on September 12, 1995. Plaintiff contends that these payments represent tax payments and that the HMO tax is improperly imposed upon it because it is exempt from taxation as a charitable institution pursuant to NY Constitution article XVI and Insurance Law article 43. Plaintiff seeks a declaration that the statute imposing this tax is unconstitutional as applied to it, and further seeks the return of all monies paid under the statute.
Defendants cross-move for summary judgment declaring that the assessment imposed by Public Health Law § 2807-c (2-a) is not a tax, and that even in the event that the court finds that it is a tax, plaintiff is not entitled to exemption. Defendants argue that the 9% assessment is a regulatory mechanism. They contend that payment differentials among hospital payers are rate-setting tools used historically to promote social goals relating to health care.[4] Public Health Law § 2807-c (2-a) was enacted to give incentive to HMOs to enroll Medicaid recipients *624 under the belief that the health care needs of Medicaid patients would be more effectively and efficiently addressed in a “managed care” setting, and additionally, to generate revenue for the State.
Whether the Public Health Law § 2807-c (2-a) “differential” on rates paid to hospitals for in-patient care imposes a tax upon HMOs and, if so, whether plaintiff is exempt from payment of the tax, are questions of law which are appropriately determined on summary judgment. The question whether a provision imposes a tax or a regulatory fee turns on legislative intent. (American Sugar Ref. Co. v Waterfront Commn., 55 NY2d 11, appeal dismissed sub. nom. New York Shipping Assn. v Waterfront Commn., 458 US 1101.) Plaintiff provides some legislative materials with the moving papers, including a summary distributed to the Senate session describing the legislation and reporting that the HMO differential will raise $31 million for the State general fund. The expenses to administer the funds were not to exceed $200,000. The sum of $1 million was earmarked to aid managed care development, leaving revenue for the general fund far exceeding the associated expenses and the expenditure earmarked for the social goal. In August 1992, revisions to the legislation were proposed to insure that the assessment would generate sufficient revenue. (Tallon Bill mem.) It cannot be overlooked that the legislation imposing the assessment upon HMOs was a revenue act. The legislative materials thus emphasize the revenue-raising role of Public Health Law § 2807-c (2-a).
It is significant that the amount generated by the differential was not to be paid to the hospital to cover its expenses, but instead was to end up in the general fund of the State. Charges exacted for revenue purposes, or to offset the cost of general governmental functions are generally held to be taxes (New York Tel. Co. v City of Amsterdam, 200 AD2d 315, 317; Matter of Joslin v Regan, 63 AD2d 466, 470, affd 48 NY2d 746; Radio Common Carriers v State of New York, 158 Misc 2d 695), while fees are “enacted principally as an integral part of the regulation of an activity and to cover the cost of regulation.” (Radio Common Carriers v State of New York, supra, at 698, citing American Trucking Assns. v O’Neill, 522 F Supp 49.) “Taxes are imposed for the purpose of defraying the costs of government services generally * * * [while] [flees * * * have been *625 characterized as the Visitation of the costs of special services upon the one who derives a benefit from them’ ”, (Albany Area Bldrs. Assn. v Town of Guilderland, 141 AD2d 293, 298, affd 74 NY2d 372.) The amount of a regulatory fee “cannot be greater than a sum reasonably necessary to cover the costs of issuance, inspection and enforcement”. (Matter of Torsoe Bros. Constr. Corp. v Board of Trustees, 49 AD2d 461, 465.)
In holding that an exaction from employers was in the nature of a license fee rather than a tax, the Court in American Sugar Ref. Co. (supra, at 26-27) said “[a] license fee has for its primary purpose the regulation or restriction of a business deemed in need of public control, the cost of such regulation being imposed upon the business benefited or controlled, whereas the primary purpose of a tax is to raise money for support of the government generally”. In that case, the Court found that the fee was imposed for a purpose which brought benefits to’ the industry which would “in major part redound to the benefit of employers.” (Supra, at 27.)
Although the exaction from HMOs in the instant case is undoubtedly for the purpose of regulating the health care industry, it differs from that found to be a license fee in Amer-can Sugar Ref. Co. (supra) in that here the funds are directed to the general coffers to meet the cost of general governmental functions and are not utilized in a way that “redounds to the benefit of’ the payer. The revenue raised bears no relationship to the cost of regulation. The policy behind the legislation, which seeks to lower the cost of the Medicaid program by forcing enrollment in managed care, is one benefiting the wider community of State taxpayers, and there is no special benefit to HMOs. Where the legislation has both regulatory and revenue-raising aspects, emphasis is placed on “the revenue’s ultimate use” (San Juan Cellular Tel. Co. v Public Serv. Commn., 967 F2d 683, 685), which, in the instant case, is for the common welfare (County of Westchester v Town of Harrison, 201 Misc 211, 215), and not more narrowly for the benefit of HMOs, nor the specific regulation of the health care industry.
Plaintiff was an intervener in a Federal court action in which plaintiffs claimed that the statutory assessments enacted as part of the Omnibus Revenue Act of 1992 were preempted under the Employee Retirement Income Security Act (29 US § 1001 et seq. [ERISA]) and the Federal Employees Health Benefits Act (5 USC § 8901 et seq. [FEHBA]). In Travelers Ins. Co. v Cuomo (813 F Supp 996), the United States District Court for the Southern District of New York assumed that the statu *626 tory assessments, including the 9% assessment at issue in the instant case, were taxes within the meaning of the Tax Injunction Act (28 USC § 1341). The court relied, in particular, upon the fact that the assessments were paid into the State’s general fund, and further observed that a major purpose of the legislation appeared to be to balance the State’s budget. ('Travelers Ins. Co. v Cuomo, supra, at 1000, 1004.) The Court of Appeals modified the court’s decision on other grounds, but expressly upheld the conclusion that the 9% and 11% surcharges in the 1992 legislation were taxes. (Travelers Ins. Co. v Cuomo, 14 F3d 708, 713.) The United States Supreme Court reversed the holding of the lower courts that the surcharges imposed by the 1992 legislation were preempted by ERISA and FEHBA, but declined to review the conclusion of the lower courts under the Tax Injunction Act because neither party challenged those conclusions. (New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co., 514 US 645.) Thus, the only precedent on this issue holds that the 9% differential applied to HMOs under Public Health Law § 2807-c (2-a) is a tax. This court concurs.
Having determined that plaintiff is entitled to declaratory judgment that the 9% assessment is indeed a tax, the court must address plaintiff’s claim to exemption from such tax. Plaintiff is exempt from taxation under Internal Revenue Code (26 USC) § 501 (c) (3), and claims exemption from State and local income, property, sales and use taxes, based upon plaintiffs status as a not-for-profit, charitable institution, and as a nonprofit health service corporation pursuant to article 43 of the Insurance Law. Plaintiffs original certificate of incorporation under section 402 of the Not-For-Profit Corporation Law states that the corporation has been organized exclusively to serve a public purpose and has not been formed for pecuniary profit or financial gain. The restated certificate of incorporation, filed in 1992 when plaintiff became a health service corporation under article 43 of the Insurance Law, declares intent to operate on a nonprofit basis end pursuant to the requirements for exemption from taxation of Internal Revenue Code (26 USC) § 501 (c) (3). Internal Revenue Code (26 USC) § 501 (c) (3), in pertinent part, exempts from Federal income taxes corporations organized and operated exclusively for “religious, charitable, scientific, testing for public safety, literary, or educational purposes”, no part of the net earnings of which inures to the benefit of any private shareholder or individual.
Plaintiff is exempt under the Federal statute as a corporation with a charitable purpose. Charitable is a broad concept in *627 the Federal law and exemption from taxation is granted to entities conferring a public benefit—“a benefit which the society or the community may not itself choose or be able to provide, or which supplements and advances the work of public institutions already supported by tax revenues.” (Bob Jones Univ. v United States, 461 US 574, 591.) Plaintiff has been granted exemption from sales and use taxes by the State Department of Taxation and Finance and is registered with the New York State Office of Charities.
The burden is upon the plaintiff to show that the tax exemption claimed is clearly given by statute and the exemption statute is required to be strictly construed. (Matter of Grace v New York State Tax Commn., 37 NY2d 193, 196.) Plaintiff argues that the tax at issue is a tax upon property and claims exemption from taxation of real and personal property pursuant to article XVI, § 1 of the Constitution of the State of New York. Article XVI, § 1 provides that exemption from taxation may be granted only by general laws. It further provides that exemptions, once granted, “may be altered or repealed except those exempting real or personal property used exclusively for religious, educational or charitable purposes as defined by law and owned by any corporation or association organized or conducted exclusively for one or more of such purposes and not operating for profit.”
Article XVI, § 1 does not itself confer tax exemption, but provides that exemptions may be granted to charitable institutions by general laws, and, once granted, they cannot be repealed. (Matter of PACER, Inc. v Planning Bd., 217 AD2d 47, 51.) Plaintiff must show the statutory source of the claimed exemption, and, to receive the protection from the repeal afforded by article XVI, plaintiff must show that the Legislature has, by enacting the Public Health Law § 2807-c (2-a) tax, repealed an exemption for real or personal property used exclusively for religious, educational or charitable purposes by a nonprofit charitable organization.
The sole statutory exemption cited by plaintiff is that afforded by Insurance Law § 4310 (j), which exempts all article 43 corporations from every State, county, municipal and school tax. This is certainly a broad exemption clearly given by statute, and it must be read as an exemption for all taxes including those on real or personal property. Defendants do not deny that a broad exemption from taxation is included in article 43 of the Insurance Law, but they argue that plaintiff did not become an article 43 corporation until two months after the *628 enactment of Public Health Law § 2807-c (2-a), and that said enactment modified Insurance Law § 4310 (j) insofar as exemption from the tax is concerned. This argument is based not upon any express amendment or modification of the Insurance Law, but upon the language of Public Health Law § 2807-c (2-a) (a), which begins as follows: “Notwithstanding any inconsistent provision of this section or any other law to the contrary, rates of payment to general hospitals for reimbursement of inpatient hospital services provided to subscribers of health maintenance organizations operating in accordance with the provisions of * * * article forty-three of the insurance law * * * shall be the case based payments per discharge * * * increased by a factor of nine percent”.
Defendants claim that the quoted language modified the Insurance Law § 4310 (j) tax exemption so that the 9% surcharge is effective notwithstanding section 4310 (j), and that it operates against plaintiff because plaintiff did not become a not-for-profit health service corporation under Insurance Law article 43 until June 2, 1992, two months after the enactment of Public Health Law § 2807-c (2-a). Public Health Law § 2807-c (2-a) expressly imposed a tax upon article 43 corporations which were previously tax exempt. Defendants do not cite any law supportive of their contention that plaintiff is not entitled to raise the constitutionality of the repeal of the tax exemption. If the enactment of this tax repealed a tax exemption for real or personal property used for charitable purposes by a nonprofit corporation, such repeal is prohibited by article XVI, § 1 of the Constitution, and it is irrelevant that plaintiff did not qualify for such exemption until two months after the constitutionally prohibited repeal. According to the rules of construction, “[a]n attempt to repeal a statute by an unconstitutional exercise of legislative power does not effect a repeal of the earlier statute.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 377.)
The question remains whether Public Health Law § 2807-c (2-a), insofar as it imposes a tax on article 43 corporations, can be said to repeal an exemption of real or personal property used exclusively for charitable purposes. Defendants argue that the 9% assessment is not a tax on real or personal property and thus the statute does not repeal an exemption for such property. Obviously, there is no exemption for real property at issue, but the result is not so clear as to personal property. Plaintiff argues that the 9% factor is a tax upon payments to hospitals for service, or the monies paid for hospital services, and that money is personal property. This argument *629 has a compelling logic. Personal property is generally defined to include money, notes, bonds, stocks and other intangibles. (General Construction Law § 39; Black’s Law Dictionary 1096 [5th ed 1979]; 87 NY Jur 2d, Property, § 4.)
Although “property” does not have a precise or universal definition, the scope and limitations of the term must be governed by the purposes of the Act in which it is found. (Kokoszka v Belford, 417 US 642, 645.) The purpose of article XVI of the Constitution is to protect and preserve the right to tax exemption against adverse legislation (Riverdale Country School v City of New York, 13 AD2d 103, affd 11 NY2d 741), because it is the public policy of the State to .encourage nonprofit organizations dedicated to promotion of public welfare. (Church of Christ the King v City of Yonkers, 115 Misc 2d 461.) Such purpose affords little basis for argument that “personal property” in article XVI does not include incorporeal property such as money or payments made for services.
Lastly, the argument that plaintiff does not have a charitable purpose within the meaning of article XVI of the Constitution is unconvincing. Article 43 corporations cannot be operated for pecuniary profit and they must be maintained and operated for the benefit of their members and subscribers as co-operative corporations. (Insurance Law § 4301 [j].) They are required to operate under open enrollment and community rating practices which are legislated because they are of public benefit and social utility. They are subject to heavy regulation under article 43, the objective being to make hospital and health services widely available at low cost to those who are least able to bear the financial burden of illness. (Insurance Law art 43; 70 NY Jur 2d, Insurance, § 1327.) The express relief from tax burden granted in section 4310 (j) reflects legislative recognition that corporations formed under article 43 serve a public purpose and confer a public benefit “ ‘unstained by personal, private or selfish considerations’ ”. (Sherman v Richmond Hose Co. No. 2, 230 NY 462, 469; Abrams v Richmond County S.P.C.C., 125 Misc 2d 530.)
“The term ‘charitable’ is not defined by the Constitution or by general statutory language.” (Matter of American Socy. for Prevention of Cruelty to Animals v Tax Commn., 113 Misc 2d 427, 434.) It is, however, “not confined to the relief of the poqr or to the assistance of learning and religion, but includes the advancement of objects of general public utility.” (Sherman v Richmond Hose Co. No. 2, 230 NY 462, 468, supra.) Exemptions are constitutionally protected because “ ‘[t]hese corpora *630 tions are discharging social obligations which the State would otherwise have to assume and are reasonably entitled to constitutional protection in the exemptions granted to them’ ”, (Matter of American Socy. for Prevention of Cruelty to Animals v Tax Commn., supra, at 435, quoting Report of Comm on Taxation to 1938 Constitutional Convention leading to adoption of NY Const art XVI.)
The promotion of public health has been expressly recognized as a charitable purpose in this State. (Matter of Farm Sanctuary v Patton, 221 AD2d 67, 68; Williams Institutional Colored M. E. Church v City of New York, 275 App Div 311 [and cases cited therein], affd 300 NY 716.) It is also noteworthy that plaintiff is considered organized for a charitable purpose under numerous laws, including the Internal Revenue Code (26 USC); Tax Law § 1116 (a) (4); EPTL 8-1.4; and under 20 NYCRR 1-3.4 (b) (6). (Abrams v Richmond County S.P. C.C., supra, at 533; Rabbi Solomon Kluger School v Town of Liberty, 76 Misc 2d 691; Matter of Associated YM-YWHA’S of Greater N. Y. v D’Angelo, 38 Misc 2d 1082.) Plaintiff is a corporation organized for a charitable purpose under article XVI of the Constitution entitled to the protection afforded by section 1 of that article.
Judgment is granted to plaintiff declaring that the 9% tax of Public Health Law § 2807-c (2-a) cannot be applied to plaintiff because such tax is prohibited by the nonrepealer clause of article XVI, § 1 of the Constitution of the State of New York.
Plaintiff seeks a return of the money paid under the illegal tax. In accordance with the decision in Ozanam Hall of Queens Nursing Home v State of New York (241 AD2d 670), this court may direct the return of the money as incidental to the primary claim regarding constitutionality of the tax. However, “[t]he settled law is that the payment of a tax or fee cannot be recovered subsequent to the invalidation of the taxing statute * * * unless the taxpayer can demonstrate that the payment was involuntary”. (Video Aid Corp. v Town of Wallkill, 85 NY2d 663, 666; City of Rochester v Chiarella, 58 NY2d 316, cert denied sub nom. Quality Packaging Supply Corp. v City of Rochester, 464 US 828.) Protest must be made prior to or at the time of payment or the tax is considered to be voluntarily made. (Supra.) “[A] simple payment ‘under protest’ for the taxpayer preserves its challenge”. (Video Aid Corp. v Wallkill, supra, at 670; Imperial Gardens v Town of Wallkill, 228 AD2d 562.) Here, plaintiff clearly shows that the payment in the sum of $241,884.40 by draft dated September 12, 1995 was sent to *631 the HMO Pool Administrator under cover of a letter asserting payment under protest. As to this payment, the money must be returned to plaintiff by the State. The two payments made in August and September 1992 were not made under express protest registered at the time of payment. The reports filed for and after January 1993 cannot vitiate the voluntariness of the 1992 payments when made. The court rejects plaintiffs argument that its intervention in the Travelers litigation in October 1992 was sufficient notice of protest as to the payments made in August and September 1992. (Matter of Tennessee Gas Pipeline Co. v Town of Chatham Bd. of Assessors, 239 AD2d 831.) Thus, plaintiff is not entitled to return of those monies.
Plaintiff shall submit judgment declaring the tax unconstitutional as applied to plaintiff and directing the return of the sum of $241,884.40.

. Added by Laws of 1992 (ch 55, § 346; ch 41, § 95), repealed by Laws of 1996 (ch 639).

. The Omnibus Revenue Act of 1992 also amended the Public Health Law to impose an 11% surcharge on DRG rates paid by commercial insurers. The revenue raised by this surcharge also made its way to the State’s general fund.

. From July 1, 1992 to December 31, 1993 plaintiff paid an assessment of 2.25%.

. Since its enactment in 1988, Public Health Law § 2807-c (1) (b) has imposed a 13% assessment above the DRG rates upon all insurers, except “the Blues”, in an effort to assist “the Blues” in their competitive standing *624 with commercial insurers. This assessment is distinguished from the 9% assessment at issue in the instant case, because it went to the hospitals to cover their expenses, and was not deposited to the State’s general fund.