This opinion is uncorrected and subject to revision before publication in the New York Reports.
-------------------------------------------------------------------

No. 49
In the Matter of Highbridge
Broadway, LLC,
             Appellant,
          v.
Assessor of the City of
Schenectady,
             Respondent,
Schenectady City School District,
             Respondent.

Brian D. Mercy, for appellant.
Jonathan P. Nye, for respondent Schenectady City School District.
New York State School Boards Association, amicus curiae.

DIFIORE, Chief Judge:

The issue on this appeal is whether a taxpayer who files a petition challenging the amount of the ten-year business investment exemption under Real Property Tax Law § 485-b must file annual petitions while the initial petition is pending in order to compel compliance with a resulting court order.  We hold

- 1 -

that there is no requirement to do so.

I.

RPTL 485-b provides a partial ten-year exemption for certain improvements made to real property, which is known as the business investment exemption.  The amount of the exemption in each of the ten years is calculated using an exemption base, which is the difference between the pre-improvements value of the property and the post-improvements value of the property, as determined by a single assessment roll.  For the first year, the exemption base is multiplied by fifty percent to arrive at the exemption amount.  In each year thereafter, the exemption base is multiplied by a decreasing percentage until zero is reached in year eleven, marking the end of the exemption.  RPTL 485-b (3) provides that the exemption can be obtained by filing a single application with the city assessor.

Petitioner applied for the business investment exemption in March 2008.  In July 2008, the city assessor published the 2008 assessment roll, which valued petitioner's property at $653,100 and granted petitioner an exemption of $10,470.  During this same month, petitioner timely filed a petition to challenge both the assessed value of the property on the 2008 assessment roll and the amount of the business investment exemption that was granted.  Petitioner argued that the assessed value of the property was too high and that the amount of the exemption was too low.

The city assessor was the only respondent named in this proceeding but, as required by RPTL 708 (3), petitioner served a copy of the petition on the Schenectady City School District (the School District), within which the property was located. Although the School District could have intervened in the proceeding as of right pursuant to RPTL 712 (2-a), it did not. It is undisputed that the School District received timely notice of the 2008 petition and that the School District knowingly decided not to intervene in this proceeding.

In June 2011, Supreme Court granted summary judgment to petitioner on the amount of the exemption and recalculated the exemption for years 2008 through 2014. The court directed the city assessor to issue refunds to petitioner for a portion of previously paid taxes. Copies of the court's order were sent to the city assessor and the School District. The order was not appealed.

The city assessor complied with the order and the City and County of Schenectady issued refunds to petitioner. The School District, however, refused to issue refunds. Petitioner then moved to hold the School District in contempt and for an award of costs, sanctions and attorneys' fees.

Supreme Court refused to hold the School District in contempt because the court's order directing refunds did not specifically reference the School District. The court, however, determined that the plain language of the statute established

that only a single application was required to obtain the business investment exemption.[1]  Therefore, the court concluded that a single petition sufficed to challenge the exemption. Thus, the court ordered the School District to issue refunds of any excess taxes it collected during the 2009 through 2014 calendar years due to the prior incorrect calculation of petitioner's exemption.[2]

Both petitioner and the School District appealed.  The Appellate Division modified, on the law, by reversing the portion of the order that directed the School District to issue refunds for the 2009, 2010 and 2011 assessment rolls (124 AD3d 1193 [3d Dept 2015]).[3]  The Appellate Division concluded that, even though only a single petition was required to apply for the business investment exemption, unless petitioner filed annual challenges to "the assessment" in 2009, 2010 and 2011, while the initial 2008 petition was pending, petitioner failed to preserve its

---

[1] New York courts have consistently interpreted RPTL 485-b as "a single 10-year exemption" (see e.g., Schulman Master Ltd. Partnership I v Town/Village of Harrison, 162 AD2d 674, 675 [2d Dept 1990], citing Matter of Twenty First Point Co. v Town of Guilderland, 101 AD2d 407 [3d Dept 1984], affd 64 NY2d 954 [1985]).

[2] The court excluded any taxes collected by the School District in 2008 from this order because the court concluded, based on the evidence presented, that the taxes collected by the School District in 2008 used the 2007 assessment roll.

[3] The Appellate Division order only addressed the 2008 through 2011 assessment rolls.  Therefore, the portion of the Supreme Court's order directing tax refunds for 2012 through 2014 was not disturbed.

challenge.  Since petitioner had failed to file these annual

challenges, the Appellate Division held that the court lacked

jurisdiction to order the School District to issue refunds for

these three assessment rolls.  The Appellate Division relied on

Matter of Scellen v Assessor for City of Glens Falls (300 AD2d

979 [3d Dept 2002]) to support its determination.[4]

        We granted petitioner leave to appeal the portion of

the Appellate Division order that vacated the Supreme Court order

directing the School District to issue tax refunds for the 2009,

2010 and 2011 assessment rolls (25 NY3d 1097 [2015]).  We now

reverse, and reinstate the portion of the Supreme Court order

directing the School District to issue refunds on any taxes

collected in excess of the amount petitioner would have paid if

the properly calculated exemption had been applied to the 2009

through 2011 assessment rolls.


                              II.

        As previously explained, the business investment

exemption is of ten years' duration and the amount of the

---

[4] In Matter of Scellen, the Appellate Division held that, in order for a judicially reduced assessment to be subject to the three-year assessment valuation freeze under RPTL 727, petitioner must file petitions challenging the assessment value in each of the three years subject to the freeze.  Recently, another Appellate Division Department declined to follow Matter of Scellen (see Matter of the Torok Trust v Town Bd. of Town of Alexandria, 128 AD3d 97 [4th Dept 2015]).  Notably, however, neither of these decisions addresses RPTL 485-b, the statute at issue here.

exemption in each of the ten years is calculated using a single assessment roll.[5]  Petitioner argues that the single petition in 2008 preserved its right to obtain tax refunds for 2009, 2010 and 2011.  Petitioner contends that it would be "pointless" to require a taxpayer to file annual petitions to challenge the amount of the business investment exemption because the exemption is determined by a single assessment roll -- here, the 2008 assessment roll.

The School District argues that petitioner is not entitled to tax refunds for 2009, 2010 and 2011 because, in order to receive refunds in article 7 tax certiorari proceedings, separate tax certiorari proceedings must be filed each year in which refunds are sought.

When petitioner filed this article 7 proceeding in 2008 and served it on the city assessor and the School District, petitioner made two claims: (1) that the property assessment

---

[5] The dissent takes issue with our assertion that the exemption is calculated using a single assessment roll, claiming "this will not always be the case" and citing to RPTL 485-b (2) (a) (ii) (see dissenting op. at 12).  RPTL 485-b (2) (a) (ii) provides an automatic adjustment to the exemption amount when the assessed value of the land increases or decreases by "fifteen percent or more" in any year in which the exemption applies.  As the dissent does not and cannot deny, here, the assessed value of the land never increased or decreased by fifteen percent or more, so 485-b (2) (a) (ii) was never implicated.  Of even greater importance, the automatic adjustment under RPTL 485-b (2) (a) (ii) applies regardless of whether a petition is filed to challenge the exemption amount.  Since this provision applies with or without the filing of a petition, it has no bearing on our analysis.

listed on the 2008 assessment roll was overvalued and (2) that the amount of the business investment exemption granted was undervalued.[6]  As explained above, in the context of RPTL 485-b, the specific assessment roll that is used to calculate the exemption base is the only relevant assessment roll; once the exemption base is determined, a statutory formula is applied to calculate the business investment exemption amount for all ten years.

Here, there is no dispute that the 2008 assessment roll was used to calculate the exemption base.  As Supreme Court correctly concluded, the successful petition challenging the mathematical calculation of the exemption amount for 2008 applied in all subsequent years subject to the exemption.  Supreme Court determined, and we agree, that the plain language of RPTL 485-b

---

[6] The dissent attempts to undercut the significance of the fact that the petition was timely provided to the School District in 2008, affording the School District not only the opportunity to intervene, but to anticipate the potential impact if petitioner's challenge to the exemption calculation was successful.  The dissent suggests the petition was ambiguous because "[a]side from citing to RPTL 485-b, the petition provided no indication that any assessments other than the 2008 assessment were at issue" (dissenting op. at 2).  School Districts are, of course, deemed to be aware of the impact of an RPTL 485-b exemption.  In fact, RPTL 485-b (1) affords school districts the opportunity to opt out of the business investment exemption, which the School District had not done here.  Because the business investment exemption spans multiple years and is calculated using a single assessment roll, it should have been clear to the School District that a challenge to the calculation of this exemption would change the exemption amount in all years in which the exemption applied.  Thus, the dissent's position is belied by the very nature of the RPTL 485-b exemption.

establishes that a single petition challenging the business investment exemption suffices. Moreover, petitioner is correct that to require petitions to challenge the business investment exemption amount in 2009, 2010 and 2011 would serve no practical purpose, since the exemption amounts at issue were all derived from the 2008 assessment roll.

Indeed, to require a challenge in subsequent years means that in each of 2009, 2010 and 2011, petitioner would have had to challenge the value of the 2008 assessment roll and the manner in which the statutory formula was applied to that assessment roll. Both the value of the 2008 assessment roll and the calculation of the exemption amount were, however, already subject to court review in the 2008 petition. There was nothing in the assessment rolls for 2009 through 2011 to challenge that had not already been challenged by the 2008 petition. Since the assessment rolls for 2009, 2010 and 2011 are irrelevant to the calculation of the exemption, we will not require annual RPTL 485-b challenges to correct an error that was already identified and addressed by a petition in an earlier year.

Put another way, when a computational error based on a single assessment roll results in the miscalculation of the RPTL 485-b exemption, we hold that this error may be challenged by a single petition at the time the error is discernible. It is a waste of resources for all involved, including the courts, to require a property owner to bring a challenge addressing the same

error in each and every year the exemption applies.

The dissent argues that to preserve a taxpayer's right to refunds, "it is necessary to commence a proceeding to challenge each final assessment while the court's determination of the taxpayer's challenge to such calculation is pending" (dissenting op. at 6).[7] At the same time, the dissent concedes that "the relevant statutes do not expressly state that a proceeding must be brought for every year in which a refund is sought" (dissenting op. at 7-8). The dissent adopts the logic of the Appellate Division, concluding that "'the statutory scheme underlying RPTL article 7 evinces a clear legislative intent that a separate proceeding be timely commenced to challenge each tax assessment for which relief is sought'" (124 AD3d at 1194, quoting Matter of Scellen, 300 AD2d at 980). We disagree and

---

[7] Notably, none of the cases the dissent cites for this proposition concern RPTL 485-b and its ten-year exemption. For example, the dissent cites People ex rel. Hilton v Fahrenkopf (279 NY 49, 52-53 [1938]) and Vantage Petroleum, Bay Isle Oil Co. v Board of Assessment Review of Town of Babylon (61 NY2d 695, 698 [1984]) to the effect that "[e]ach annual proceeding is separate and distinct from every other"; those cases therefore held that res judicata does not apply from one year to the next because each assessment is different. But precisely the opposite is true with respect to the ten-year exemption provided under RPTL 485-b. Because there is "only one tax exemption which is applied over a 10-year period," in Schulman Master Ltd. Partnership I v Town/Village of Harrison (162 AD2d 674, 675 [2d Dept 1990]), in which succeeding property owners attempted to challenge a RPTL 485-b exemption that their predecessors had unsuccessfully challenged three years earlier, the Appellate Division found that res judicata applied to defeat the subsequent action (id. at 675-76).

conclude that the statutory scheme with respect to RPTL 485-b evinces no such intent.

In recognition of the significant resources courts devote to tax certiorari proceedings, the legislature has enacted measures to curb unnecessary litigation that drains the resources of the courts. In 1995, the legislature created RPTL 727 -- which freezes a property's assessed value for three assessment rolls after its value has been judicially adjusted by a court -- to curb the number of annual challenges and "spare all parties the time and expense of repeated court intervention" (Governor's Approval Mem, Bill Jacket, L 1995, ch 693).[8] The legislature has also taken steps to expedite tax certiorari proceedings by creating mechanisms that accelerate the note of issue (see Sponsor's Mem, Bill Jacket, L 1995, ch 693).

Significantly, the dissent ignores the legislative history of the business investment exemption itself, which also reflects the legislature's desire to preserve court resources. The business investment exemption was made available in 1976 to provide "partial tax exemptions for a 10-year period to encourage

---

[8] The dissent's discussion of RPTL 727 misses our point about this section, which is that it demonstrates the legislature's desire to decrease the amount of tax certiorari litigation. We agree with both petitioner and the School District that it is unnecessary even to address RPTL 727 to decide this appeal. We note, however, that the dissent's interpretation of RPTL 727, which adopts that in Matter of Scellen (300 AD2d 979), was recently rejected in Matter of the Torok Trust v Town Bd. of Town of Alexandria (128 AD3d 97 [4th Dept 2015]), as referenced above.

the construction and expansion of commercial and industrial facilities in the State" (Newsday, Inc. v Town of Huntington, 55 NY2d 272, 275 [1982]).  Notably, this section originally provided for the exemption to be recalculated by the assessor each year based on annual increases in the assessed value of the improved property.  In 1985, RPTL 485-b was amended to alleviate the need for the assessor to continually recalculate the assessed value of the property for purposes of determining the exemption amount (see L 1985, ch 512, Mem of Senator Charles D. Cook, 1985 Legis Ann at 204).  The amendment provided that the exemption be calculated based on a single assessment roll -- thereby creating greater certainty during the ten-year duration of the exemption for taxpayers, assessors, and school districts alike, and removing the need for annual challenges.

Lastly, the School District argues that it is not permitted to set aside funds in reserve to cover potential refunds in years in which a separate petition is not filed.  If the School District believes that the Education Law prohibits reliance on a properly filed RPTL 485-b petition to set aside funds in subsequent years subject to the exemption, and wishes to be able to set aside such funds, the School District may seek relief from the legislature.

Accordingly, the Appellate Division order insofar as appealed from should be reversed, with costs, and the order of Supreme Court reinstated.

Matter of Highbridge Broadway, LLC v Assessor of the City of Schenectady

No. 49

STEIN, J.(dissenting):

It has long been commonly understood that a taxpayer who commences an RPTL article 7 proceeding challenging an assessment in a specific tax year must commence annual proceedings to protest subsequent assessments while the initial proceeding is pending in order to preserve the right to a refund for taxes paid in any additional years. The majority now deviates from that rule in the context of a real property tax exemption, despite the absence of any statutory language in RPTL 485-b compelling its conclusion. In my view, the majority's holding is inconsistent with the statutory scheme set forth in RPTL article 7 and the general principle that taxes must be paid under protest in order for the taxpayer to be entitled to a refund. In addition, I believe that the majority's holding will prove to be unduly burdensome to school districts. Therefore, I respectfully dissent.

Inasmuch as the majority accurately recounts, in some detail, the facts and procedural history of the underlying litigation, only a brief summary follows. Petitioner applied for, and was granted, an RPTL 485-b partial tax exemption in 2008 based on the completion of certain improvements to its property

- 1 -

in 2005.[1]  Petitioner then unsuccessfully filed a complaint with the assessor challenging the 2008 tentative assessment valuation and the assessor's calculation of the exemption (see RPTL 512). After the final 2008 assessment roll was filed, petitioner commenced an RPTL article 7 proceeding to review the 2008 assessment, again challenging the valuation and the exemption amount.  Aside from citing to RPTL 485-b, the petition provided no indication that any assessments other than the 2008 assessment were at issue.  In 2011, Supreme Court granted petitioner's subsequent motion for summary judgment to the extent that it held that the assessor had incorrectly calculated the amount of the exemption prospectively through 2014, thereby entitling petitioner to a refund for the intervening years.

The Schenectady City School District -- which had been notified of the proceeding pursuant to RPTL 708 (3), but had not appeared (likely because the School District did not rely on the 2008 assessment to issue any tax bills) -- refused petitioner's demands for a refund, maintaining that petitioner was not entitled to refunds for those years for which it had not filed an RPTL article 7 petition.  Although Supreme Court denied petitioner's ensuing motion to hold the School District in

---

[1]  Petitioner apparently did not apply for the exemption until 2008, well beyond the one-year statutory deadline (see RPTL 485-b [3]).  Because the exemption was granted nonetheless, and no party argued in the courts below or in this Court that the application was untimely, that issue is not before us.

contempt, it held, in 2013, that the School District was required to issue refunds for any years for which it had collected taxes based on the erroneous exemption calculation.  On the resulting cross appeals, the Appellate Division modified Supreme Court's order by vacating the direction that the School District issue refunds to petitioner, and otherwise affirmed (124 AD3d 1193 [3d Dept 2015]).  The Appellate Division held -- correctly, in my view -- that the School District could not be compelled to issue refunds because "property owners must preserve their right to relief through annual challenges to the assessment pending a determination of the original assessment challenge," and petitioner had not commenced a proceeding for any year other than 2008 (124 AD3d at 1195).

As noted by the majority, the partial tax exemption afforded by RPTL 485-b is available for a period of 10 years, and the amount of the exemption for each year is generally calculated pursuant to a statutory formula that uses an "exemption base" derived from the increase in the property's assessed value in the first year to which the exemption applies (see RPTL 485-b [2] [a] [i]).[2]  In order to obtain the exemption, a taxpayer is required to file an application with the city assessor within one year of

_____

[2]  However, in the event of a change in the property's assessment equal to or greater than 15% during the exemption period, the statute provides a separate formula and process for calculating a new exemption base and, accordingly, a new exemption amount (see RPTL 485-b [2] [a] [ii]).

the completion of the improvements upon which the exemption is based (see RPTL 485-b [3]).  If the application is approved, the assessor calculates the amount of the exemption, and then enters the assessed value of the exemption on the assessment roll (see RPTL 485-b [4]).

The majority concludes that "the plain language of RPTL 485-b establishes that a single petition challenging the business investment exemption suffices" to compel a school district or other entity to refund taxes -- for all years pending judicial determination -- based on an improper exemption calculation (majority op., at 8).  To be sure, RPTL 485-b requires only a single application for the exemption, itself.  However, that statute does not address the necessity of filing petitions to challenge denials or calculations of exemptions; nor does it otherwise govern judicial review of such issues (see RPTL 485-b [3]).  This is because proceedings challenging the denial or calculation of an RPTL 485-b exemption in an assessment -- like almost all real property tax certiorari proceedings -- are governed by RPTL article 7, whereas RPTL 485-b merely sets forth the manner in which an exemption may be requested, calculated, and granted by the assessor (see RPTL 700 [1] ["A proceeding to review an assessment of real property shall be brought as provided in this article unless otherwise provided by law"]; RPTL 706 [1] ["The grounds for reviewing an assessment shall be that the assessment to be reviewed is excessive, unequal or unlawful,

or that real property is misclassified"]; RPTL 701 [4] [b] [an assessment may be "excessive because the real property failed to receive all or a portion of a <u>partial exemption</u> to which the real property or owner thereof is entitled pursuant to the law authorizing the partial exemption" (emphasis added)]). Indeed, it is settled that, in circumstances such as those presented here, an RPTL article 7 proceeding is a taxpayer's exclusive remedy to redress the denial or miscalculation of a partial tax exemption (see <u>Kahal Bnei Emunim & Talmud Torah Bnei Simon Israel v Town of Fallsburg</u>, 78 NY2d 194, 204 [1991]; <u>Hewlett Assoc. v City of New York</u>, 57 NY2d 356, 363 [1982]; <u>Dun & Bradstreet, Inc. v City of New York</u>, 276 NY 198, 206 [1937]). Thus, we must look to RPTL article 7, not RPTL 485-b, to determine whether a taxpayer is required to file successive petitions while judicial review is pending in order to preserve the right to a refund for taxes paid in subsequent years.[3]

A close inspection of RPTL article 7 reveals that, where successive assessments may be affected by judicial review, proceedings must be commenced for each assessment upon which the

---

[3] For this reason, the Legislature's amendment of RPTL 485-b (to provide that the exemption amount for each year be derived from the exemption base established in the first year in order to alleviate the assessor's burden of reassessing an eligible property every year) is irrelevant to the question presented here -- that is, whether a <u>challenge</u> to the computation of the exemption, which may be applied to successive years, necessitates successive proceedings during the pendency of the challenge.

petitioner intends to seek recovery.  Throughout article 7, the
statutory provisions refer to court review of an "assessment,"
and require that the judicial proceeding to review an assessment
be brought within 30 days of the completion and filing of the
final assessment roll (RPTL 702 [2]).  Manifestly, the very
nature of a yearly "assessment," as well as the time limitations
delineated in article 7, precludes the conclusion that multiple
years of assessments can routinely be challenged in the same
petition (see generally Matter of Sterling Estates v Board of
Assessors of County of Nassau, 66 NY2d 122, 126 [1985] ["(i)n
short, the taxpayer must tell the assessors what assessment he
(or she) protests and why it is wrong" (emphasis added)]).  In
other words, RPTL article 7 plainly contemplates a separate
challenge to each yearly assessment.  Moreover, it is clear that
the provisions of article 7 also govern challenges to the
calculation of exemptions (see RPTL 700 [1]; 701 [4] [b]; 706),
without qualifying or altering the general requirement that a
taxpayer must challenge the specific assessment that it seeks to
have reviewed and modified in order to obtain a refund of taxes
paid pending such review.

It logically follows, then, that where more than one
"assessment" is affected by an erroneous exemption calculation,
it is necessary to commence a proceeding to challenge each final
assessment while the court's determination of the taxpayer's
challenge to such calculation is pending, in order to preserve

the taxpayer's right to a refund or refunds for the intervening year(s). Indeed, RPTL 726 -- which governs entitlement to refunds -- provides that a refund may be ordered if "it is determined that the assessment reviewed was excessive, unequal or unlawful, or that real property was misclassified" (RPTL 726 [1] [emphasis added]). Consequently, where a taxpayer fails to commence proceedings relative to subsequent assessments, RPTL 726 does not apply because such assessments have not been reviewed by the court and, accordingly, the taxpayer is not entitled to a refund based on such assessments.[4]

As the Third Department stated in Matter of Scellen v Assessor for City of Glens Falls, the aforesaid statutory scheme "evinces a clear legislative intent that a separate proceeding be timely commenced to challenge each tax assessment for which relief is sought" (300 AD2d 979, 980 [3d Dept 2002]). This reasoning was recently adopted by the Second Department (see Matter of Jonsher Realty Corp./Melba, Inc. v Board of Assessors, 118 AD3d 787, 789 [2d Dept 2014]), and I find it to be persuasive. Moreover, while the relevant statutes do not expressly state that a proceeding must be brought for every year

---

[4] This underlying principle is similarly reflected in (1) the Uniform Rules for the New York State Trial Courts, which require that "a separate note of issue shall be filed for each property for each tax year" (22 NYCRR 202.59 [d] [2]; 202.60 [e] [2]), and (2) RPTL 710, which provides for easy consolidation of RPTL proceedings to facilitate efficient and economical review of related or successive petitions.

in which a refund is sought, this has long been understood as the governing rule.  For example, the 1988 edition of a leading treatise in real property assessment law states that "each tax year requires a new proceeding, even if a previous proceeding is still pending" (Harry O. Lee and Wiliford A. Leforestier, Review and Reduction of Real Property Assessments in New York, § 1.01, p 6 [3d ed 1988]).  The treatise explains,

> "Because of the leisurely pace at which certiorari proceedings are tried and the length of time involved in preparing a case, it is common for a certiorari proceeding to review a tax assessment for one year to remain on the calendar beyond the deadline for the filing of papers for the following year . . . .  If such is the case, it is imperative that the [taxpayer] file the necessary complaint to reserve the right of review for each year and then commence a new judicial proceeding.  A motion for consolidation of the proceedings for two or more unresolved years is then in order"

(Review and Reduction of Real Property Assessments in New York § 4.06, at 210-211).

The enactment of RPTL 727 -- which provision, as the majority notes, is not directly at issue here -- did not alter or abolish the rule that annual petitions must be filed with respect to challenges to valuations or exemptions for intervening years. Indeed, the freezing of a property's assessed value for three assessment rolls after its value has been judicially adjusted, as provided in RPTL 727, is aimed at reducing the need for court intervention.  However, this change was prompted, not by any perceived burden in requiring a taxpayer to take the minimal

steps necessary to file annual petitions while review is pending but, rather, by the fact that "[t]here [was] no current provision of . . . law restricting an assessor from increasing an assessment in the year following a judicially ordered reduction" (Sponsor's Mem, Bill Jacket, L 1995, ch 693 at 7). In other words, the Legislature was concerned that, upon reduction of an assessment by the court in an RPTL article 7 proceeding, an assessor would inflate the following year's assessment value in order to compensate for the reduction in taxes, which would then require the taxpayer to fully litigate each increase. This impetus is evidenced by the reference to RPTL 722, which provides for an award to the taxpayer of certain monetary allowances if the assessor is found to have increased the asssessed property value without adequate cause (see Sponsor's Mem, Bill Jacket, L 1995, ch 693 at 7; RPTL 722 [2] [a]). In fact, the amendments to the RPTL that included the enactment of RPTL 727 were specifically designed to "provid[e] much-needed relief to the school districts and local governments across the State, whose finances have long been imperiled by the existing certiorari process" that permitted taxpayers to accumulate multiple years worth of tax refunds by allowing their proceedings to languish the full four years before a note of issue was required to be filed (Governor's Approval Mem, Bill Jacket, L 1995, ch 693 at 5). Thus, "the legislative history of RPTL 727 gives no indication that the Legislature intended to relieve petitioner of

[the] requirement [of filing annual petitions] in the case of assessment rolls established during the pendency of a prior RPTL article 7 proceeding" (Matter of Scellen, 300 AD2d at 980).

Nor does the rule that a taxpayer must file petitions for intervening years follow solely from the fact that an assessment may change from year to year, which is the basis upon which petitioner and the majority seek to distinguish RPTL proceedings challenging exemptions from RPTL proceedings challenging assessments on other grounds. To be sure, we have recognized the potential for an intervening assessment to change with the passing years (cf. People ex rel. Hilton v Fahrenkopf, 279 NY 49, 52-53 [1938] ["Each annual proceeding is separate and distinct from every other"]; see also Vantage Petroleum Bay Isle Oil Co. v Board of Assessment Review of Town of Babylon, 61 NY2d 695, 698 [1984]), and this is a factor that supports my conclusion that each and every assessment must be challenged individually.[5] More fundamentally, however, the requirement implicit in article 7 that a taxpayer challenge the assessment for each year in which a refund is sought is primarily a corollary of the principle that taxes paid without protest -- as were petitioner's property taxes for the years other than 2008 -- are generally unrecoverable (see Video Aid Corp. v Town of

_____

[5] Such factor is implicated with an RPTL 485-b exemption, as well since, as previously noted, the exemption base derived from the first assessment may be recalculated if the assessed value fluctuates by 15% or more (see RPTL 485-b [2] [a] [ii]).

Wallkill, 85 NY2d 663, 666 [1995]; City of Rochester v Chiarella, 58 NY2d 316, 323 [1983]; Mercury Mach. Importing Corp. v City of New York, 3 NY2d 418, 425 [1957]; Adrico Realty Corp. v City of New York, 250 NY 29, 32 [1928]).  We have also recognized that "the Legislature has specified that protest is a condition precedent to a proceeding under Real Property Tax Law article 7 by providing that a petition seeking review 'must show that a complaint was made in due time to the proper officers to correct such assessment'" (Sterling Estates, 66 NY2d at 126, quoting RPTL 706 [2]; see RPTL 512).  Yet, here, the majority ignores both petitioner's failure to comply with the requirement of RPTL article 5 that it grieve each assessment and petitioner's failure to petition the court in protest of each assessment.

Again, while RPTL 485-b unquestionably requires only one application for the exemption -- which, if properly granted and calculated requires the taxpayer to take no further action to receive the exemption for the duration of the statutory time period -- where the taxpayer challenges the denial or calculation of the exemption, the statutory scheme of RPTL article 7 governs. Under article 7, by failing to file petitions for each year during the pendency of the court's review, petitioner forfeited his right to seek through the court a refund of taxes based on assessments from those intervening years.  For that reason, although RPTL 726 (1) (c) provides that school districts are bound by final orders directing the correction of an assessment

on the assessment roll, the Appellate Division correctly
concluded that Supreme Court lacked jurisdiction to compel the
School District to issue refunds for any year for which a
petition was not filed.

I further disagree with the majority's conclusion that
"to require petitioner to file a petition to challenge the
. . . exemption amount [in each year] would serve no practical
purpose" because the exemption is granted upon a single
application and is typically derived at the outset from the
initial assessment (majority op., at 8).  Although it is true
that the amount of the RPTL 485-b exemption at issue here appears
to be dependent upon only the 2008 assessment, this will not
always be the case (see RPTL 485-b [2] [a] [ii]).  In any event,
"[i]t is scarcely necessary to recite the importance of the
assessment process to the fiscal operation of municipalities"
(Sterling Estates, 66 NY2d at 124; see Video Aid Corp., 85 NY2d
at 667).  As evidenced by the various amendments to the RPTL
aimed at ensuring that school districts receive adequate
notification of, and the ability to participate in, tax
certiorari proceedings, the Legislature has repeatedly recognized
that such proceedings, and the refunds that may flow therefrom,
have a substantial impact on school district finances and
budgeting.  For example, the School District points out that,
under Education Law § 3651 (1-a), it cannot withdraw funds from
its tax certiorari reserve fund to cover the costs of refunds for

years subsequent to the year in which the monies are deposited
into such fund (see Education Law § 3651 [1-a]; 43 Ed Dept Rep 20
[Decision No. 14,904]).  Petitioner's failure to commence
proceedings for each year has, therefore, impeded the School
District's ability to anticipate and adequately plan for the
reimbursement of tax monies that were received several years
earlier (see Education Law § 3651 [1-a], [6]).

　　　　　The majority's ruling today imposes a substantial
burden on school districts by requiring them to speculate as to
which years' assessments may be implicated in each and every
petition relating to any of the numerous potential real property
tax exemptions (see generally RPTL article 4).  Notably, the
difficulty inherent in accurately gauging the number of years in
which an exemption may be applied is evidenced by the very case
before us, where, although petitioner sought a 10-year exemption,
it waived several years of the exemption through its late
application.  The administrative burden attendant to estimating,
in advance, the number of years and the amount of potential
refunds that may be at issue, without the benefit of successive
petitions, will be considerable.[6]

---

　　[6] The majority presupposes that an exemption that could
potentially be applicable to multiple tax years will necessarily
be awarded for that entire period.  However, it is entirely
plausible that there could be intervening years in which a
taxpayer does not seek a refund based on an exemption, resulting
in an overestimation and earmarking of funds for tax certiorari
refunds and an unnecessary reduction in the school district's
available resources.  In the absence of petitions to signal each

The majority's comment that the School District could have chosen to participate in the proceedings below misses the point.  The School District's appearance in the 2008 proceeding would not have alleviated the problems caused by petitioner's failure to file successive petitions because it likely still would not have known that petitioner would seek refunds for subsequent years until petitioner first requested such relief in its motion for summary judgment, made several years after the proceeding was commenced.  By contrast, had petitioner filed separate petitions for review of the 2009 through 2011 assessments -- despite the fact that its objections may have been identical to its challenge to the 2008 assessment -- the School District would then have been alerted of the possibility that it would owe petitioner a tax refund for each of those years and could have planned accordingly.

Ultimately, the majority's holding undermines the legislative intent behind the amendments to the RPTL permitting school districts to decline to become a party to every tax certiorari proceeding in recognition of the substantial time and expense involved (see RPTL 712 [2-a]; L 1996, ch 503, § 2). Pursuant to this decision, school districts will now be compelled to spend their limited resources on appearances in tax certiorari proceedings relating to assessments upon which they may not even

year for which a petitioner may seek a refund, the School District's ability to appropriately respond is impaired.

have relied.  This is contrary to the very purpose of the RPTL statutory scheme.

In sum, I would affirm the Appellate Division order and hold that petitioner was not entitled, under RPTL article 7, to refunds from the School District based on its failure to protest any assessment other than the 2008 assessment.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order insofar as appealed from reversed, with costs, and order of Supreme Court reinstated.  Opinion by Chief Judge DiFiore. Judges Pigott, Rivera, Abdus-Salaam, Fahey and Garcia concur. Judge Stein dissents and votes to affirm in an opinion.

Decided May 5, 2016